# Richmond

D. J. Sidney Dawkins v. Commonwealth of Virginia.

March 3, 1947.

Record No. 3127.

Present, All the Justices.

56

The opinion states the case.

*T. W. Messick, L. E. Hurt, Jr.,* and *Shuler A. Kizer,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *M. Ray Doubles, Assistant Attorney General,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

D. J. Sidney Dawkins was indicted under Virginia Code, 1942, (Michie), section 4402, the charge being that he "in and upon one Robert C. Rogers feloniously did make an assault and him, the said Robert C. Rogers, then and there unlawfully, feloniously and maliciously did strike, beat and wound and did then and there unlawfully, feloniously and maliciously cause bodily injury to the said Robert C. Rogers by means of divers and sundry blows with his fist and by kicking and kneeing him, the said Robert C. Rogers in the groin and in and about the legs with intent him, the said Robert C. Rogers, then and there to maim, disable, disfigure and kill, against the peace and dignity of the Commonwealth of Virginia."

He was tried by a jury, which returned this verdict:

"We the jury find the defendant, D. J. Sidney Dawkins, sometimes also called Scotty Dawkins, guilty of unlawfully causing bodily injuries to Robert C. Rogers with intent to maim, disable, disfigure or kill him, as charged within the indictment, and fix his punishment at 3 years confinement in the penitentiary."

A motion to set aside the verdict on the ground that it was contrary to the law and the evidence was overruled,

and the defendant was sentenced in accordance with the verdict.

The evidence in the case is in hopeless conflict. Since the jury has believed that presented by the witnesses for the Commonwealth, and their verdict has been approved by the trial court, we must accept as proven those facts sustained by credible evidence. That evidence may be summarized as follows:

About 4:30 p. m. on October 22, 1945, Robert C. Rogers drove his car out of a public garage into the line of traffic proceeding west on Church street, in the city of Lynchburg. He entered into the line of traffic immediately in front of an automobile driven by Dawkins. It was his intention to drive westwardly as far as 5th street, turning off there. As Rogers approached the first intersection (apparently 7th street), the light being green, the defendant's car bumped into him "from the rear, very hard." Continuing in the line of traffic, moving slowly, at a distance of fifty feet farther on, Rogers' car received "another hard bump from the rear." Traffic had speeded up somewhat by this time, and there was sufficient space for any car in the rear to pass the car of Rogers, if the driver so desired; but while in the block between 7th and 6th streets, Rogers' car was bumped for the third time by the car of the defendant. Rogers speeded up his car somewhat; but, nevertheless, as he entered the block between 6th and 5th streets, the defendant bumped into his car a fourth time. Determined to find the reason for such actions, and holding out his hand for a stop, Rogers pulled over toward the curb, cars being parked next to the curb, headed into a small space and stopped. After he had stopped, the defendant's car gained momentum and hit him again, "a definitely hard blow, harder than any of the others."

Rogers, irritated, got out of his car and went back to the defendant's car and said to Dawkins: "What is the meaning of this damn foolishness?" Rogers positively denied that he used any profanity or vile epithet towards Dawkins. The reaction of Dawkins towards Rogers' inquiry was imme-

diate. He struck through the open window of his car door at Rogers, and exclaimed, "So I'm a God damned fool? Let me out of this car. I'll teach you to cut in on me." The anger of Dawkins being apparent, and Rogers, realizing that he could not match the physical powers of the defendant, tried to keep the door of the car closed so as to prevent Dawkins from getting out to the street. Dawkins, however, forced the door open, got out, immediately assaulted Rogers, hitting him in and about the face with his fists, kicking him on the legs, and striking him at least twice in the groin with the knee. Rogers said his face was beaten to a pulp, both eyes were closed, his nose was broken in several places and mashed over on his cheek bone, and that he suffered much pain and physical anguish.

The injuries received by Rogers were described by two physicians as multiple fractures of the nose, including a breaking of its inner membrane, a permanent displacement of the nose, and an almost complete obstruction of the right naris, and also severe bruising and discoloration of the genital organs.

As a result of his injuries, Rogers was confined to his bed, except for visits to his doctors, for three weeks.

After the affray, Rogers immediately summoned the police, and with them returned to the scene, where a crowd had gathered. According to two disinterested witnesses, Dawkins then said to Rogers: "I will twist your nose on the other side of your face," and "I'll kick the hell out of you," in addition to other vulgar expressions.

Rogers is a salesman, 45 years of age, 5 feet, 11½ inches tall, and weighs 155 pounds. He was in bad health, and had been more or less of an invalid since 1944, when he had undergone a serious operation on his bladder.

Dawkins is a promoter of professional wrestling matches. He is 37 years of age, 5 feet, 9½ inches tall, and weighs 220 pounds. He began professional wrestling at the age of 18, and although he practically gave up that profession in 1938, he still enters the ring sometimes to fill in as a substi-

tute. He said he was discharged from the armed services because his leg "turns red on each one of my shanks."

Character witnesses gave each of the parties a good reputation as peaceful, law-abiding citizens, and for truth and veracity.

In contradiction of the above evidence, Dawkins stated that he bumped Rogers' car only twice, and that the bumpings were unintentional. He said that when Rogers complained to him using vile and profane language, that he, Dawkins, then got out of his car to show Rogers that no damage was done; that as he opened the car door Rogers slammed it against his leg, and started hitting him; and as he got out on the street Rogers hit him on the chin. He further said that he struck Rogers with his fists only two or three times in order to protect himself. He denied that he kicked or struck Rogers with his knee, or, after the affray, used the threatening or abusive language attributed to him. His testimony was corroborated by one of his employees, who was a passenger in the car with him at the time of the altercation.

The indictment is in compliance with Code, section 4402.* It includes, among its allegations, a charge of maliciously and unlawfully causing bodily injury, and a description of the means used to inflict such injury, that is, by the fist, foot and knee.

Numerous instructions were given covering malicious injury, unlawful injury, simple assault and battery, and the right of self-defense. Upon the evidence and under the instructions, the accused was found guilty of an unlawful assault, etc.

---

*Section 4402. "If any person maliciously shoot, stab, cut or wound any person or by any means cause him bodily injury, with intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be punished by confinement in the penitentiary not less than one nor more than ten years. If such act be done unlawfully, but not maliciously, with the intent aforesaid, the offender shall, in the discretion of the jury, be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months, and fined not exceeding five hundred dollars. (Code 1887, section 3671.)"

There are six assignments of error, but they raise only two principal issues. It is contended that the evidence was insufficient to warrant the giving of any instructions on maliciously or unlawfully causing bodily injury, or to sustain a conviction for unlawfully causing bodily injury.

In *Harris* v. *Commonwealth*, 150 Va. 580, 142 S. E. 354, 58 A. L. R. 1316, this is said: "The true purpose and meaning of the statute was doubtless conceived to be to define and punish as felonies those acts which had theretofore been considered misdemeanors only in those cases where it also appeared that there was the felonious intent to maim, disfigure, disable, or kill."

Due to the conflicting evidence, there is a sharp difference in the Commonwealth's theory of the case and the theory of the defendant. It is the theory of the Commonwealth that the circumstances attending the attack made by the defendant on Rogers were such as to indicate a wanton and willful intention on the part of the defendant to maim, disfigure, or disable his opponent. On the other hand, it is the defendant's theory that the evidence was insufficient to convict him of any higher offense than simple assault and battery. It is contended that the only bodily injury inflicted by him upon Rogers was that which came from blows of the fist.

Was there sufficient evidence to justify the instructions relating to maliciously causing bodily injury?

It is a fact that Rogers was badly beaten. There is ample evidence to support the verdict that he suffered unlawful injury. Bodily injury was inflicted both to the nose and to the genital organs of Rogers. The means used by the defendant were his fist and knee. These means are within the language of the statute, viz., "by any means."

Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. It may be directly evidenced by words, or inferred from acts and conduct which necesarily result in injury. Its existence is a question of fact to be determined by a jury under proper instructions.

The evidence of the Commonwealth shows that Rogers did nothing more than enter a line of traffic in front of a car driven by the defendant, and that, for no other reason, the defendant, five times, within the distance of a block and a half, deliberately bumped into his car. Some of these bumps were heavy. Finally Rogers stopped his car, went to the car of the defendant, and asked him what he meant by that "damn foolishness." The defendant immediately struck at Rogers through the open window of his car, and undertook to get out of his car, remarking, "So, I'm a God damned fool? Let me out of this car. I'll teach you to cut in on me." Rogers, realizing his handicap in an affray with the defendant, undertook vainly to prevent the latter from getting out of the car. The defendant got out, brutally assaulted him, striking him numerous times about the face, breaking his nose, and kneeing him in the groin. As a result, Rogers was physically disabled and incapacitated for three weeks.

It is disclosed that Dawkins provoked the affray by reason of his antecedent ill will exhibited in the persistent bumping of Rogers' car. This ill will led him into a vicious attack upon Rogers, the savage nature of which was indicated by the bodily injuries inflicted and the means employed to inflict them. The kicks in the groin of Rogers showed an unmitigated brutality in keeping with characteristics attributed to one who acts devoid of any consideration for his opponent. They indicated a heart and mind regardless of social duty and a willful and deliberate intent to maim, disfigure, or disable the victim. Considering the difference in the size and strength of the two men, the method of attack was inexcusable.

█ The actions of the defendant in breaking the nose of Rogers, and particularly in kneeing his genital organs, were actions peculiarly calculated to disfigure, or disable, and permanently disable. A man is presumed to have intended the immediate, direct and necessary consequences of his voluntary act. His intent may be established by his conduct

and his statements. *Merritt* v. *Commonwealth*, 164 Va. 653, 662, 180 S. E. 395.

The statements of the accused both before the altercation, during the altercation and thereafter afford evidence of malice. Those statements, accompanied by the violence and brutality of the attack, were sufficient to carry the question of malice to the jury.

The defendant's denial of malice put that question in issue. Acting within their province, the jury accepted the denial of the defendant. The effect of their finding, that he was only guilty of an unlawful assault, was that there was insufficient evidence to justify a verdict for a malicious assault, not that there was no evidence whatever of malice.

The defendant contends that since the words, "shoot, stab, cut, or wound," are specifically enumerated in Code, section 4402, that the words following them, "or by any means causing bodily injury," should be limited to include only assaults with artificial weapons causing injuries of the kind first specified. Such a construction of the statute would exclude an assault made with nature's weapons. There is no merit in this contention.

It has been held in this State since *M'Whirt's Case*, 3 Gratt. (44 Va.) 594, decided in 1846, that the same malicious and unlawful results can be accomplished "with the weapons endowed by nature" as can be accomplished by more deadly artificial weapons.

The test of the offense of maliciously or unlawfully causing bodily injury is the intent with which the result is accomplished rather than the nature of the means, where the means are specified and established. Thus, one may permanently maim, disfigure, disable, or kill with the fists, or knees, if the force is applied with violence and brutality. Also, one may gouge out the eye of another with his fingers, stomp another to death with his feet, or bite off a portion of his body. The words of the statute, "by any means," include such means.

In the recent cases of *Shackelford* v. *Commonwealth*, 183 Va. 423, 32 S. E. (2d) 682, 683; and *Roark* v. *Common-*

*wealth*, 182 Va. 244, 28 S. E. (2d) 693, Mr. Justice Hudgins reviewed the authorities dealing with the question whether the specific intent to maim, disfigure, disable, or kill may be presumed from blows struck with the naked fist. In each of these cases, it was said that while, under ordinary circumstances no malice may be presumed from a blow with the bare fist, even though death results, "an assault with the bare fist may be attended with such circumstances of violence and brutality that an intent to kill will be presumed." *M'Whirt's Case, supra.*

In *Shackelford* v. *Commonwealth, supra,* we held that a nose broken by means of a blow from the fist constituted a disfigurement, and that a break of the skin within the nose constituted a wound within the purview of the ancient definition and a bodily injury within the broadened meaning of section 4402.

In *Johnson* v. *Commonwealth*, 184 Va. 409, 35 S. E. (2d) 594, it is said:

"To 'shoot, stab, cut or wound,' under the statute comprise distinct offenses, and to cause bodily injury is likewise a distinct offense."

The phrase "by any means" before the words "cause him bodily injury" emphasize the correctness of that conclusion.

The acts which constitute the offense, under the statute, are stated in the alternative. The malicious stabbing of another, with intent to maim, disfigure, or disable is put in the class of a malicious stabbing with intent to kill, punishable as a felony. Maliciously causing bodily injury by any means, with intent either to maim, disfigure, disable, or kill is a distinct cognate offense, subject to the same classification as a felony.

We find no error in the instructions relating to self-defense. The law of self-defense is the law of necessity, and the necessity relied upon to justify the acts of one must not arise out of his own misconduct. The evidence does not justify a belief that there was anything in the conduct of Rogers, more or less of an invalid, to suggest to Dawkins, a professional wrestler and trained athlete, weighing 65

pounds more than his opponent, that he was, or even thought he was in danger of bodily harm at the hands of the unarmed Rogers.

It is seriously urged for a reversal of the judgment that the penalty fixed by the jury was too severe on a man who bore an erstwhile excellent character as a peace-loving citizen. However sympathetic one may be with that suggestion, the degree of punishment in a case like this has been entrusted to the jury, as a peculiar province belonging to it, and not to the court. The verdict is well within the limit fixed by statute. Its severity is explained by the harsh circumstances attending the crime. Relief therefrom, if any, must be sought from the pardoning authority.

We find no error in the judgment complained of. It is accordingly affirmed.

*Affirmed.*