STATE of South Dakota, Plaintiff
and Respondent,

v.

Ted MEANS, Defendant and Appellant.

No. 11883.

Supreme Court of South Dakota.

March 14, 1979.

Rehearing Denied April 18, 1979.

Le Ann Larson Finke, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

James D. Leach, Elisabeth S. Brodyaga, San Jose, Cal., James H. Baker, of Kirby Law Office, Sioux Falls, for defendant and appellant.

McKEEVER, Circuit Judge.

This is an appeal by Ted Means (appellant) following a jury verdict returned February 20, 1976, finding him guilty of riot to obstruct justice. The charge and subsequent jury verdict resulted from an incident at the Minnehaha County Courthouse in Sioux Falls, South Dakota, on April 30, 1974. We affirm.

The facts leading to appellant's arrest have been previously detailed in the cases of *State v. Kane*, S.D., 266 N.W.2d 552 (1978), and *State v. Russell Means*, S.D., 268 N.W.2d 802 (1978), in which other defendants were similarly convicted of riot to obstruct justice for their participation in the same disturbance from which appellant's conviction resulted. Consequently, the facts will be only briefly outlined herein.

On April 30, 1974, at the trial of Sarah Bad Heart Bull, et al., a number of spectators did not stand for Judge Bottum when he entered the courtroom. As this was the second time that this had occurred in the course of the trial, Judge Bottum ordered all spectators cleared from the courtroom. A group of spectators, however, refused to leave. After approximately two hours of discussion the Sioux Falls Tactical Squad entered the courtroom and removed them. At that time a struggle took place between the tactical squad and the spectators, including appellant. See *State v. Bad Heart Bull*, S.D., 257 N.W.2d 715 (1977).

Appellant was tried with co-defendant Edgar Bear Runner, who was acquitted of the charge of riot to obstruct justice.

Appellant has presented several assignments of error which he asserts require a reversal of his conviction.

I.

Appellant first contends that the court erred to his prejudice by refusing to give a proper instruction on self-defense and the defense of others. Appellant cites *Zemina v. Solem*, D.S.D., 438 F.Supp. 455 (1977), in support of this contention.

In *Zemina v. Solem*, supra, aff'd per curiam, 8 Cir., 573 F.2d 1027 (1978), it was held that "a defendant is entitled to an instruction on his theory of defense if there is evidence to support it and a proper request is made." 438 F.Supp. at 467. In that murder case, defendant requested instructions relating to defense theories of excusable homicide, justifiable homicide and self-defense or defense of a third person.

(See *State v. Zemina,* 87 S.D. 291, 206 N.W.2d 819 (1973), for our disposition of that case.) Appellant insists that *Zemina v. Solem,* supra, is controlling in this situation. We do not agree. In *Zemina,* according to the federal court, there was evidence supporting defendant's claim that he had acted in self-defense or defense of another. The record indicated that the victim had, prior to the killing, assaulted defendant and his brother. There was evidence of a struggle that resulted in serious injury to defendant.

Here, on the other hand, appellant knew that he had been ordered to leave the courtroom; he also knew that if he did not leave voluntarily law enforcement officers would eject him. Under the clear evidence of the case, appellant had over a several hour period invited a confrontation with the police by intentionally and continually refusing to carry out a lawful order of the court. Appellant could not have been under the mistaken impression that he had any defensible right to remain in the courtroom after being ordered to leave. Since he knew that the officers were acting within the scope of their authority his duty was, as said in *Morton v. State,* 190 Ga. 792, 799, 10 S.E.2d 836, 841 (1940), "to submit quietly to [the] arrest" and not to commence a riot as he and the others did. See also *Dawkins v. Commonwealth,* 186 Va. 55, 41 S.E.2d 500 (1947), holding that conditions brought about by one's own conduct may not be relied upon to invoke the excuse of self-defense.

Appellant does not attempt to justify any particular action he took as an act of self-defense. Rather, he argues that his and the others' reactions to the lawful order to clear the courtroom should have been submitted to the jury under an instruction that would have permitted the jury to find that those reactions constituted a lawful means of self-defense and were thereby excusable.

Appellant cites no cases in which the commencement of a riot has been recognized as an acceptable method of self-defense. Logic compels the conclusion that the facts in this case when viewed in the light of SDCL 22–10–4,[1] the statute under which appellant was convicted, do not present an issue of self-defense submissible to a jury.

■  Appellant also contends that the tactical squad attacked the spectators who refused to stand, and that the squad was therefore engaging in an unlawful attack and had no legal authority. SDCL 22–18–2 states:

> To use or attempt or offer to use force or violence upon or toward the person of another is not unlawful when necessarily committed by a public officer in the performance of any legal duty or by any other person assisting him or acting by his direction.

Under some fact situations self-defense may be a valid defense to the charge of riot to obstruct justice. However, as we have noted, in this case appellant invited the confrontation with the police by intentionally refusing to carry out a lawful order of the court. The police officers were ordered by the trial judge to clear the courtroom. They were operating under lawful authority. Appellant and other spectators who refused to stand knew that they had violated the court's order and that they would be subject to removal by the police. They had no legal authority to remain in the courtroom once the judge had requested them to leave, and the police officers had authority to use such force as was necessary to remove them.

■  Appellant further contends that the court erred in refusing to instruct that he could lawfully come to the defense of another who had a lawful right to be in the courtroom, and also in failing to grant an

---

1.  SDCL 22–10–4 was repealed by SL 1976, ch. 158, § 10–8 effective April 1, 1977. Effective date delayed to October 1, 1977, by SL 1977, ch. 189, § 127. The statute provided:

    If the purpose of a riotous assembly was to resist the execution of any statute of this state or of the United States *or to obstruct*

    *any public officer of this state or of the United States, in the performance of any legal duty,* or in serving or executing any legal process, every person guilty of participating in the assembly is punishable  . . .. . (emphasis supplied)

instruction pertaining to ignorance or mistake of fact. As with respect to appellant's contention regarding self-defense, we conclude that appellant's claim in this regard is also without merit. Once appellant intentionally decided to remain in the courtroom and to disregard the lawful order of the court, the result of his conduct was to invite a confrontation; he thereby precluded himself from claiming that he had a legal excuse, i. e., self-defense or coming to the defense of another, as well as from subsequently claiming ignorance or mistake of fact. There is no evidence to indicate, nor does appellant claim, that he was ignorant of or mistaken concerning the nature of the trial court's order. When he intentionally chose not to abide by the rules of the court or leave the courtroom as the judge ordered, he precluded himself from subsequently claiming ignorance or mistake as a legal excuse for the affray which resulted from that decision.

## II.

■ Appellant also assigns as error the giving of an instruction by the trial court which defined riotous assembly. He alleges that the instruction was so misleading as to be prejudicial because under SDCL 22–10–10[2] such an assembly would or could be a misdemeanor and the instruction did not contain a statement to that effect. We conclude that the trial court did not err in its instruction defining riotous assembly. Our reading of SDCL 22–10–10 does not indicate that an unlawful "original purpose of the meeting" is an element of the crime of riot. The elements of riot are clearly stated in SDCL 22–10–1, and one cannot avoid a conviction of riot even if his original purpose was a lawful assembly. The trial court did not err in giving its instruction of the definitions of riotous assembly.

## III.

■ Appellant next cites as error the failure of the court to dismiss the informa-

tion filed against him because he was not brought to trial within two terms after the filing of the information. SDCL 23–34–2[3] states:

If a criminal action, unless postponed upon defendant's application, is not brought to trial during or before the second term after the one at which the indictment or information is filed, the court must order the prosecution dismissed.

The information was filed against appellant on August 12, 1974. On that same day appellant filed a demurrer to the information, and a hearing was held regarding the demurrer on August 26, 1974. The trial judge did not overrule the demurrer until January 23, 1975, and by order quashed the demurrer on January 27, 1975. Appellant contends that by requesting in December 1974 that his case be consolidated with those of other defendants facing trial for similar charges from the same incident, who had a trial date in January 1975, he indicated his request for trial. A motion to dismiss was filed in May 1975, and denied on August 6, 1975, on the basis that appellant's demurrer acted to toll SDCL 23–34–2 until the trial court had issued a decision on January 23, 1975. Appellant argues that he at no time made an application for a continuance. He argues that the trial court's taking of five months to reach a decision on overruling the demurrer should not be found to toll SDCL 23–34–2 as he never waived his right to a speedy trial.

As this court stated in *State v. Runge,* S.D., 233 N.W.2d 321 (1975), SDCL 23–34–2 is a rule for the administration of criminal laws and not a legislative definition of a constitutional right. Furthermore, there has been no showing that the delay was purposeful, oppressive or improperly motivated, as required by *State v. Opheim,* 84 S.D. 227, 169 N.W.2d 716 (1969). Had the matter been dismissed for delay, the state would not have been barred from reprose-

**2.** SDCL 22–10–10 was repealed by SL 1976, ch. 158, § 10–8 effective April 1, 1977. Effective date delayed to October 1, 1977, by SL 1977, ch. 189, §· 127.

**3.** SDCL 23–34–2 was repealed by SL 1978, ch. 178, § 577, effective July 1, 1979.

cuting for the same offense. See SDCL 23–34–6.[4]

■ Under the circumstances of this case, this court does not view the trial court's taking of five months to make a decision on the demurrer as an unreasonable delay, and we conclude that the two-term statute was tolled pending the decision on appellant's demurrer. The trial court was faced with an acute non-recurring court congestion caused by the courthouse riot cases. The demurrer presented complex legal questions and appellant continued to file additional motions while the demurrer was pending. Appellant's motion to consolidate with other defendants did not therefore constitute a demand for an immediate trial. It also appears that appellant was not prejudiced by the delay prior to his trial in January of 1976, as he requested a continuance at that time. We find appellant's contention to be without merit.

### IV.

■ Appellant contends that his right to a speedy trial under the Sixth and Fourteenth Amendments to the United States Constitution and Art. VI, Section 7 of the South Dakota Constitution has been denied. In *State v. Black Feather*, S.D., 249 N.W.2d 261 (1976), we adopted the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Four factors to be balanced are: (1) the length of delay, (2) the reason for the delay, (3) defendant's assertion of his right, and (4) prejudice to defendant. In applying those factors to appellant's case we find that appellant's constitutional right to a speedy trial has not been violated. While there was a delay of approximately twenty months from the time of his arrest to his trial, part of this delay was caused by appellant's demurrer and other motions made by him. Appellant also did not make an express demand for a speedy trial, for as we have said above, a motion to consolidate is not the equivalent of an assertion of a demand for a speedy trial.

There was no attempt by the state to delay the trial and there was no showing that the defense was unable to obtain witnesses due to this delay.

### V.

■ Appellant contends that the trial court erred in allowing the state's witness, Kenneth Dahl, to testify concerning alleged hearsay statements which he testified were made by Dennis Banks, David Hill, David Allen, Russell Means, and an unidentified Indian woman. We cannot agree. The statements in question were made at meetings held the day before the disturbance at the trial and dealt with plans for a demonstration in connection with the trial. Prior to the day of the disturbance the trial judge ordered that the number of spectators to be admitted to the courtroom be restricted to no more than twenty persons excluding representatives of the press and clergy. To carry out this order the sheriff distributed twenty passes to persons selected by the defense team to attend the trial. One of the purposes of the meeting about which Mr. Dahl and others testified was to decide who among the group attending the meeting would receive passes. There was evidence that only people holding passes were admitted to the courtroom. See *State v. Kane*, supra, at 554, and *State v. Russell Means*, supra, at 806.

It is clear that the statements were admissible to prove appellant's existing frame of mind when he along with others began to react in a coordinated, violent manner towards the efforts of the officers to clear the courtroom. McCormick on Evidence, 2d Ed., 1972, § 249 (a section studied by the trial court prior to making the contested ruling) identifies a class of out-of-court statements which are admissible to show the effect on the hearer. See also 6 Wigmore, Evidence, § 1790 (Chadbourn rev. 1976), where the author states:

> Utterances connected with a *mob* or *riotous assemblage* have several aspects: . . . (c) As indicating the intent of the mob, whether seditious, violent, or otherwise, the expressions of intention by the persons composing it are clearly receivable, either as indirect evidence, or as

---

4. SDCL 23–34–6 was repealed by SL 1978, ch. 178, § 557, effective July 1, 1979.

assertions of a mental state. (citations omitted) 6 Wigmore, Evidence, § 1790 at 326.

The record before us allows the direct inference that appellant was present when the statements were made. These statements were admissible to show appellant's state of mind, when considering the question whether appellant acted in concert with others to use force or violence without authority of law, as the state was required to prove under SDCL 22–10–1. Accordingly, the statements were properly admitted.

The remaining issues raised by appellant that merit consideration were treated in the case of *State v. Kane,* supra, and our rulings therein are dispositive here.

The judgment of conviction is affirmed.

WOLLMAN, C. J., DUNN and MORGAN, JJ., concur.

McKEEVER, Circuit Judge, sitting for ZASTROW, J., who was a member of the court at the time this case was orally argued.

HENDERSON and FOSHEIM, JJ., not having been members of the court at the time of oral argument, did not participate.