**STATE of South Dakota, Plaintiff and Appellee,**

**v.**

**Leighton Dion RICH, Defendant and Appellant.**

**No. 15687.**

Supreme Court of South Dakota.

Argued Oct. 7, 1987.

Decided Jan. 6, 1988.

Mark Smith, Asst. Atty. Gen., Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief, for plaintiff and appellee.

Dennis C. Whetzal, Rapid City, for defendant and appellant.

SABERS, Justice.

Leighton Dion Rich (Rich) appeals his conviction for aggravated assault. We affirm.

### Facts

The evidence consists of disputed facts and greatly differing versions of what actually happened during this incident. On April 20, 1985, members and relatives of the Eagle Tail family were doing yardwork at their home in north Rapid City. Around the corner from this residence was the Edna Brown home. Terry Brown (Terry) testified that he spent the morning at the Brown house visiting with friends and working on a car he had recently sold to his father. Alcohol was present at this gathering. Trouble began when a car pulled up near the Eagle Tail residence and one of the occupants made an obscene gesture at the people working in the yard. Witnesses testified that soon after, people at the Brown house began yelling threats at the group at the Eagle Tail's. Duran White Eagle believed that the threats were aimed primarily at him, so he left. He drove to the nearby Curtis Street Apartments. When White Eagle and several friends later attempted to drive by the Brown home, they were either pelted with rocks and beer cans, chased by one person who was visiting the Browns or they stopped and made threats to the Browns (depending on whose version is considered).

White Eagle returned to the Curtis Street apartments and enlisted several young men (including Rich) to return to the Eagle Tail home. Several witnesses testified that upon their arrival, they saw Terry and Archie Brown and others yelling threats and throwing rocks from a spot near where the two backyards joined. There are many conflicting statements as to what happened next. The general testimony is that some of those with White Eagle picked up rocks, sticks, and yard tools and moved toward the Brown house.

Terry testified that he was asleep inside the Brown residence from late morning until the "attack" by White Eagle and his friends. He claimed he was awakened by Archie who told him someone was breaking windows on Terry's father's car. During the ensuing fight, Terry and Archie Brown were injured and most of the windows on the car were smashed. Terry and several others asserted that Rich was carrying a pitchfork which he used to smash the car windows. When Terry ran out of the Brown house to stop him, they contend that

Rich stabbed Terry in the hand, chest, and back with the pitchfork. Rich testified that although he had picked up a pitchfork in Eagle Tail's yard, he denied that he smashed any windows or harmed anyone at the Brown home.

After a few minutes of fighting,[1] Rich, White Eagle, and the others withdrew to the Eagle Tail residence and then left the area. The police were called during the incident and they arrived after Rich and the others left. Terry was taken to the hospital for medical assistance.

Rich was charged with two counts of aggravated assault and one count of felony intentional damage to property. He was found guilty by a jury on January 8, 1987, of aggravated assault on Terry and was acquitted on the other two counts.

## I.  INSUFFICIENCY OF THE EVIDENCE

Rich claims that there is insufficient evidence in the record to support the guilty verdict on aggravated assault.

SDCL 23A–32–9[2] makes it clear that this court's scope of review is limited. "It is a well-established rule that the trial court must have been afforded an opportunity to rule on a point of law by proper motion or objection before we will entertain an argument based on the court's failure to so rule. [citations omitted]" *State v. Giuliano*, 270 N.W.2d 33, 36 (S.D.1978).

■ The record fails to reveal a motion for acquittal or any other motion bringing the question of sufficiency of the evidence before the trial court. Although SDCL 23A–23–1 *allows* the trial court to enter a

judgment of acquittal on its own motion, it is the responsibility of the party seeking acquittal to make such a motion in the absence of action by the court. Simply because the trial court has this authority does not mean we will presume that the trial court used that authority absent evidence in the record. A motion must appear in the record.

■ Even if this issue were reviewable on the merits, there is "evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt." *State v. Cook*, 319 N.W.2d 809, 811 (S.D.1982).

## 2.  LESSER INCLUDED OFFENSE INSTRUCTION

Rich claims the trial court erred in refusing to give proposed jury instructions on simple assault as lesser included offenses of aggravated assault as charged and defined in SDCL 22–18–1.1(2). Rich proposed separate jury instructions on all five subsections of simple assault, SDCL 22–18–1.

The trial court must instruct the jury upon a lesser included offense if the evidence presented would support a conviction on the lesser charge.[3] *State v. Oien*, 302 N.W.2d 807 (S.D.1981); *State v. Heumiller*, 317 N.W.2d 126 (S.D.1982). To make this determination, the trial court must apply both a legal and a factual test. *Heumiller, supra* at 132.

Even assuming that the legal test is met, the defendant must still meet the requirements of the factual test.

Where a request has been made to charge the jury on a lesser-included of-

---

1. During this period, Archie Brown was also injured, but the jury found Rich not guilty of assault on Archie. Therefore, that portion of this incident is omitted.

2. SDCL 23A–32–9 states in part:
   On an appeal from a judgment the Supreme Court may review *any* order, *ruling, or determination* of the trial court, involving the merits and necessarily affecting the judgment *and appearing upon the record* including an order denying a new trial, and whether any such

order, ruling, or determination is made before or after judgment. (emphasis added).

3. SDCL 23A–26–7, which requires the jury to find the lowest degree of crime when a reasonable ground of doubt exists as to which degree is committed, does not apply because assault is not a crime divided into degrees. *State v. Waff*, 373 N.W.2d 18 (S.D.1985). *See also State v. Gregg*, 405 N.W.2d 49 (S.D.1987).

fense, the duty of the trial judge is determined by the evidence. If evidence has been presented which would support a conviction of a lesser charge, refusal to give the requested instruction would be reversible error. (citations omitted) There must be sufficient evidence, however, when read in the light most favorable to the defendant, which would justify a jury in concluding that the greater offense was not committed and that a lesser offense was, in fact, committed. *People v. Karasek,* 1975, 63 Mich.App. 706, 234 N.W.2d 761.

*Id.*

In our view the legal test need not be discussed because we do not believe that the factual test can be met. As this court did in *Heumiller, supra,* we assume for the purpose of this opinion, that the legal test has been met. In *State v. Feuillerat,* 292 N.W.2d 326 (S.D.1980), a murder case where the defendant was denied a simple assault instruction, we adopted the reasoning of the Wisconsin Supreme Court in *State v. Melvin,* 49 Wis.2d 246, 252, 181 N.W.2d 490, 494 (1970), as follows:

The early cases point out and emphasize and we must stress again, because the question keeps recurring, that a determination of whether an instruction on a lesser included crime should be given to a jury is not solved by merely determining the crime charged includes the lesser offense because juries are not to be given the discretion or freedom to pick and choose what offense the accused should be found guilty of. (citation omitted) The evidence must throw doubt upon the greater offense. Juries cannot rightly convict of the lesser offense merely from sympathy or for the purpose of reaching an agreement. They are bound by the evidence and should be limited to those included

crimes which a reasonable view of the evidence will sustain and does not convince beyond a reasonable doubt the additional element of the greater crime existed.

In this case the assault was carried out by means of a pitchfork. That was a dangerous weapon and caused serious bodily injury. Rich does not appear to contend otherwise. Rich intentionally used the pitchfork or he did nothing. There is no evidence to fairly support instructions under either SDCL 22–18–1(2) or (3) for recklessly or negligently causing bodily injury because Rich contended he never stabbed anyone. Likewise, SDCL 22–18–1(5) does not apply because the bodily injury was serious. Neither SDCL 22–18–1(1) nor (4) merit discussion. Here, Rich was either guilty as charged or not guilty of any offense. *State v. Wilson,* 297 N.W.2d 477 (S.D.1980); *Oien, supra.*

### 3. DEFENSE THEORIES OF JUSTIFICATION, SELF–DEFENSE AND DEFENSE OF THIRD PARTIES

Rich contends that the trial court erred in refusing to give proposed jury instructions on defense theories of justification, self-defense, and defense of others. SDCL 22–18–4 [4] authorizes the use of force necessary to defend one's self from injury or to aid or defend another person. The statute can only be interpreted to allow what would otherwise be unlawful force in situations of *imminent necessity.* Unless the individual situation required an immediate response necessary to prevent unlawful force from being inflicted upon Rich or another, the statute is not applicable.

The settled rule in this state is that a "trial court need not instruct on matters that find no support in the evidence." *State v. Chamley,* 310 N.W.2d 153, 155

---

**4.** SDCL 22–18–4 provides:

To use or attempt or offer to use force or violence upon or toward the person of another is not unlawful when committed either by the party about to be injured, or by any other person in his aid or defense, in preventing or attempting to prevent an offense against his person or any trespass or other unlawful interference with real or personal property in his lawful possession; provided the force or violence used is not more than sufficient to prevent such offense.

(S.D.1981). Rich contended at trial that he never stabbed Terry Brown or anyone else with a pitchfork. Where a defendant asserts that he never committed the assaultive act for which he is charged, a defense of self-defense is clearly inconsistent and no instruction need be given.

The evidentiary basis for a self-defense instruction must be squared with this court's prior statements on situations where the evidence indicates that the defendant was the aggressor. In *State v. Means*, 276 N.W.2d 699 (S.D.1979), this court cited with approval *Dawkins v. Commonwealth*, 186 Va. 55, 41 S.E.2d 500 (1947), which held that "conditions brought about by one's own conduct may not be relied upon to invoke the excuse of self-defense." *Id.* at 701. Later in *Means, supra*, this court stated that "the result of his conduct was to invite a confrontation; he thereby precluded himself from claiming that he had a legal excuse, i.e., self-defense or coming to the defense of another[.]" *Id.* at 702.[5]

■ Rich was not at the Eagle Tail residence when the alleged aggressive behavior by the Brown group began. He choose to go to the area of conflict. He chose to respond in an aggressive, rather than conciliatory, manner. In the time taken to drive to the Eagle Tail residence and take up weapons, the police could easily have been summoned to respond to any threatening situation. Rich voluntarily entered into the conflict which resulted in the assault and was precluded from any instruction on justification, self-defense or defense of others.

### 4. IMPOSITION OF MORE SEVERE SENTENCE

Rich argues that he was punished for the exercise of his right to trial by jury by the imposition of a sentence more severe than that offered in a pretrial plea bargain.

Prior to trial, the State offered Rich a plea bargain which would have required him to plead guilty to one ten-year felony count in exchange for State support for a maximum sentence of five years. The trial court was aware of the plea bargain and, while "not necessarily in favor," was willing to agree to this proposed arrangement. The trial court sentenced Rich to the maximum ten-year penalty after the jury convicted Rich of one count of aggravated assault.

At the sentencing hearing, the trial court received a presentence report and the testimony of a detective from the Rapid City Police Department. The detective testified as to Rich's frequent involvement in criminal activity in the Rapid City area which extended back twelve years. The trial court noted these facts on the record prior to sentencing. Rich claims the trial court was "already" generally aware of his prior "criminal activity" and "record" at the time the trial court "approved" the "proposed plea bargain."

■ The trial court has broad discretion in affixing sentences within the limits found in the statutes. *State v. Braun*, 351 N.W.2d 149 (S.D.1984). The trial court may properly consider both aggravating and mitigating circumstances in determining the appropriate sentence for the individual defendant. *State v. Carsten*, 264 N.W.2d 707 (S.D.1978). The trial court is not bound by plea negotiations offered by the prosecutor. *State v. Bolger*, 332 N.W. 2d 718 (S.D.1983); *State v. Steinmetz*, 247 N.W.2d 690 (S.D.1976). In this case, the trial court was informed and aware of aggravating circumstances—the defendant's past criminal record and notoriety among Rapid City law enforcement. The trial court stated on the record its reasons for imposing the maximum sentence and that the sentence was not imposed to punish Rich for asserting his right to a jury trial.

---

**5.** As noted in *Chamley, supra* at 155, "the federal courts have not always agreed with our determination of the evidence that would warrant an instruction on self-defense." However, the factual situation in this case is distinguishable from *Means* and *State v. Zemina*, 87 S.D. 291, 206 N.W.2d 819 (1973).

There is no evidence in this record which supports Rich's contention that the trial court imposed a ten-year, rather than a five-year sentence for reasons constituting an abuse of discretion.

Affirmed.

All the Justices concur.