STATE of South Dakota, Plaintiff
and Appellee,

v.

Scot P. MISKIMINS, Defendant
and Appellant.

No. 16188.

Supreme Court of South Dakota.

Argued Nov. 30, 1988.

Decided Jan. 25, 1989.

Rehearing Denied March 3, 1989.

Roger A. Tellinghuisen, Atty. Gen., for plaintiff and appellee; Wade Hubbard, Asst. Atty. Gen., Pierre.

Rod Woodruff, Belle Fourche, for defendant and appellant.

GILBERTSON, Circuit Judge.

## PRELIMINARY STATEMENT

Scot P. Miskimins (defendant) was convicted on November 25, 1987, of the crime of aggravated assault, SDCL 22-18-1.1(3), and commission of a felony while armed with a firearm, SDCL 22-14-12. He appeals his conviction of aggravated assault citing numerous purported errors committed by the trial court. Upon a review of the record and analysis of the legal issues presented, we affirm defendant's conviction.

## FACTS

On the morning of May 27, 1987, defendant was at his home in Mitchell, Davison County, South Dakota. The previous afternoon, Detective Kaemingk of the Mitchell Police Department was assigned to serve a felony arrest warrant upon defendant. From previous contacts, Kaemingk was familiar with defendant, where he lived and what vehicle he drove.

Kaemingk and Officer Smith went to defendant's residence to serve the warrant on May 27, 1987, at about 10:00 a.m. They pounded loudly on the door they knew defendant used and yelled, "Scottie, this is Denny from the police department." There was no response. Thereafter, Kaemingk called in Officer Parrish as additional backup. After his arrival, the officers pounded on the two doors shouting the same message. Again, there was no response. This process was repeated several times.

The officers inspected the outside of the house. It was noted that defendant's truck was parked in the driveway. Defendant's dog was usually in the yard on a leash when he was away. The police saw that the dog and its leash were not outside the house. Kaemingk heard a scratching noise from within the house which he assumed to be the dog. Based on their prior knowledge of defendant, the officers concluded defendant was in the house. It was the opinion of Detective Kaemingk that defend-

ant heard the yelling and pounding but intentionally refused to respond.

The detective and Officer Smith left the house to serve another warrant. Officer Parrish kept the house under surveillance. No one was observed entering or leaving the house. While the detective and Officer Smith were gone, they visited the parents of defendant. The parents informed the officers that they believed defendant would be at home and that he did not have a telephone.

Approximately 45 minutes after they left, the officers returned to the house. Again, Detective Kaemingk went to both the east and west doors and pounded on them and announced, "Scottie, this is Denny from the police department. Open up." Further, they attempted unsuccessfully to locate both the owner of the house and neighbors to determine if defendant was in the home.

Upon additional inspection of the house, it was observed that the ground floor windows were closed but that an upstairs window was not. Not wishing to damage the lower locked windows, the officers obtained a ladder, and Officers Smith and Parrish climbed it. Smith shouted into the window twice, "Scot, are you in there? Scot." Again, there was no response to this ninth and tenth attempt to communicate with defendant.

Thereafter, Smith and Parrish crawled into the house through the open upstairs window. They checked the upstairs and found no one. They then quietly descended the stairs. Officer Smith entered the living room, and Officer Parrish went into the kitchen.

Defendant claims he is a sound sleeper and heard none of the attempted communications. He stated that he was in the downstairs bathroom when he heard someone coming down the stairs. He grabbed his loaded shotgun which had four shells in the magazine and waited in the bathroom for the unknown person to step into the kitchen.

As Officer Parrish entered the kitchen, defendant pumped the .12 gauge shotgun

placing a shell into the chamber. At the same time, he stepped into the kitchen, pointed the gun at Officer Parrish and yelled, "What the fuck are you doing in my house?" This was the first opportunity that defendant had to determine that Officer Parrish was a policeman in full uniform.

Parrish instinctively started to reach for his pistol which was still in his holster. Seeing this, defendant responded, "Freeze. Don't do it or I'll take you out." Parrish complied and froze. With defendant's finger on the trigger, Parrish awaited what he thought would be a shotgun blast.

While these events were occurring, Officer Smith heard voices in the kitchen but could not understand what was being said. Officer Smith, who had his gun drawn and was also in uniform, entered the kitchen and observed the situation. Seeing his comrade in peril, he pointed his gun at defendant and the following conversation ensued between Smith and defendant.

(Smith) "Don't do it, Scottie, or I'll have to shoot you."

(Defendant) "If you do, I'm going to shoot him [Officer Parrish]."

(Smith) "We have a warrant for your arrest."

(Defendant) "Let's see it."

At this point, defendant swung the shotgun barrel away from Parrish and towards Smith. The barrel was only two to three feet from Parrish; he grabbed it and disarmed defendant. Defendant was then placed under arrest.

1. SDCL 23A–3–5 states in part:
   Any law enforcement officer having authority to make an arrest may break open an outer or inner door or window of a dwelling house or other structure for the purpose of making the arrest if, after giving reasonable notice of his intention, he is refused admittance, and if:
   (1) The law enforcement officer has obtained an arrest warrant; or
   (2) Exigent circumstances justify a warrantless arrest.
   The purpose of such statutes are four-fold: (1) the protection of privacy of the individual in his or her home; (2) the protection of innocent persons who may also be present on the premises where an arrest is made; (3) the prevention of situations which are conducive to violent

The entire incident between the officers and defendant was estimated to have taken about ten seconds. The officers checked the shotgun and found that it not only had a live round in the chamber, but that the safe was off the entire time defendant held it on Parrish with his finger on the trigger. While this inspection of the shotgun was going on, defendant told Officer Smith, "You fucking right it's loaded and I would (could) have killed you, too."

One neighbor testified that he watched the police from an open window across the street. This witness could not remember any pounding or yelling by the officers. The officers testified that prior to entry they did not specifically request admittance to the house or state that their purpose for being there was to arrest defendant.

Defendant was ultimately tried and convicted by a Davison County jury of one count of aggravated assault upon Officer Parrish and one count of commission of a felony (aggravated assault) while armed with a dangerous weapon. He was also tried and acquitted of the same two charges against Officer Smith.

## ISSUE I

DID THE TRIAL COURT ERR WHEN IT FAILED TO SUPPRESS PHYSICAL EVIDENCE SEIZED FROM AND STATEMENTS MADE BY DEFENDANT?

Defendant argues that the officers did not comply with the requirements of SDCL 23A–3–5,[1] which authorizes entry into a dwelling without a search warrant to make an arrest.[2] Under defendant's theo-

confrontations between the occupant and individuals who enter his or her home without proper notice; and (4) the protection of police who might be injured by a startled and fearful householder. *State v. Steingraber*, 296 N.W.2d 543, 545 (S.D.1980).

2. Such statutes are a codification of the common law. *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). This type of statute was first codified in this jurisdiction in the 1877 Dakota Territorial Criminal Procedure Code in §§ 117, 118, 121 and 124. The 1877 language in § 121 and § 124 practically mirrors the federal counterpart, 18 U.S.C. § 3109.
   Our current statute, SDCL 23A–3–5, was passed in 1978. A significant difference between the

ry, as there was no compliance with the statute, his right to be secure against unreasonable searches and seizures has been violated. He argues that this makes the entry and arrest illegal and invalid, and the evidence seized pursuant to such acts should have been suppressed by the trial court.

The facts establish that no less than ten times the officers pounded loudly on the doors of the house and yelled words to the effect, "Scottie, this is Denny from the police department." The officers knew him well and, based on the facts already set forth herein, believed him to be in the house. This was confirmed by a visit with the parents of defendant.

The evidence was presented to the trial court at the suppression hearing and later to the jury. Both found the notice given by the police to be reasonable under the facts and circumstances of this case. Defendant argues, however, that as a matter of law, such a determination is erroneous.

Defendant's argument is contradictory. Defendant testified that he did not hear the police pounding and yelling at his door. Yet he argues that if the police had stated their intentions more clearly, the arrest would have been legal. Since defendant claimed he never heard the notice given by the officers, whether the statute would have been complied with or not, the assault on Officer Parrish would still have taken place. Further, defendant fails to articulate any specific prejudice he suffered for what the police said or failed to say.[3] Cf. *Jackson v. United States,* 354 F.2d 980 (1st Cir.1965). This court has recently re-affirmed its holding that "[e]rror of constitutional dimension may be deemed harmless where the reviewing court finds, absent the error, it is clear beyond a reasonable doubt that the jury would have returned a conviction." *State v. Boykin,* 432 N.W.2d 60, 65 (S.D.1988).

In accord with the rationale adopted by the Supreme Court of Minnesota, it is not necessary for us to determine the legality of the officers' compliance with SDCL 23A–3–5 to rule on this issue placed before us for an adjudication.[4] In *State v. Wick,*

current version of 23A–3–5 and our prior statute and the federal statute is that 23A–3–5 requires only *"reasonable* notice" of the officer's intention. Our prior statute (SDCL 23–22–18, repealed by SL 1978, ch. 178, § 577; 1978, ch. 185, § 19) required "notice" of the officer's intention, and 18 U.S.C. § 3109 requires notice of the officer's "authority and purpose." The requirement of the federal statute is somewhat rigid. *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). Our legislature rejected such a rigid standard in the 1978 enactment of 23A–3–5 and the repeal of its predecessor, and opted instead for a flexible standard which could be interpreted in light of the facts of each individual case.

Conversely, in regards to the corresponding statute concerning the execution of search warrants, the 1978 legislature chose to retain the requirement that the officer announce "notice of his authority and purpose." *See* SDCL 23A–35–8.

3. Defendant argues for a subjective rather than objective interpretation of the statute. In other words, to comply with SDCL 23A–3–5, not only must the police say something to the effect, "This is the police. We have a warrant for your arrest. Let us in your house to arrest you," but the occupant of the house must also hear this announcement.

Such a standard would run afoul of the requirement that the "reasonableness" of the officer's actions be objectively determined by a judge. "And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). *See also Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978); *State v. Bruzzese,* 94 N.J. 210, 463 A.2d 320 (1983).

This is also in accord with this court's holding that defendant's silence is tantamount to a refusal of entry, thus justifying the officer's entry without it. *See State v. Max,* 263 N.W.2d 685 (S.D.1978).

4. There are recognized exceptions which allow police entry into a home despite lack of compliance with the notice requirements of statutes such as SDCL 23A–3–5 and 18 U.S.C. § 3109. Compliance is excused when it would be a "useless gesture." *Miller,* 357 U.S. at 310, 78 S.Ct. at 1196, 2 L.Ed.2d at 1338; Annotation, What constitutes Violation of 18 USCS § 3109 Requiring Federal Officer to Give Notice of His Authority and Purpose Prior to Breaking Open Door or Window or Other Part of House to Execute Search Warrant, 21 A.L.R. Fed. 820, 845 (1974). Compliance is further waived when to do so

331 N.W.2d 769, 771 (Minn.1983), the Minnesota Supreme Court held:

> Even if the arrest was unlawful, a point we need not decide, that would not have been a defense. Minnesota law does not recognize defendant's asserted right to resist an unlawful arrest or search. [citations omitted] Thus, while a defendant would have a right to resist an officer in order to defend himself or another against unjustified bodily attack, assaultive conduct is not justifiable solely on the ground that the officers are violating the defendant's fourth amendment [sic] rights or on the ground that the defendant believes that the officers are violating his rights.

See also, State v. Kutchara, 350 N.W.2d 924 (Minn.1984); State v. Diedrich, 410 N.W.2d 20 (Minn.App.1987).

Other jurisdictions on both the state and federal levels have faced the same issue where the initial arrest, stop or search and seizure was determined to be illegal. For these appellate bodies, the question then became whether the illegal actions of the officers merely reveal a crime that has been or is being committed by the time the police misconduct brings the crime to the attention of the authorities. Given such a circumstance, this evidence would be suppressible under the fruit of the poisonous tree doctrine. On the other hand, where the defendant's response is itself a new, distinct criminal act, there are sound policy reasons for not suppressing this evidence. United States v. Bailey, 691 F.2d 1009, 1017–18 (11th Cir.1982), cert. denied, 461 U.S. 933, 103 S.Ct. 2098, 77 L.Ed.2d 306 (1983). What is required of the state at this point is that it establish intervening events or circumstances independent of the primary illegality that may have so attenuated the causal connection as to dissipate the taint of the unlawful police action. Bailey, 691 F.2d at 1013.

To rule otherwise would allow a defendant carte blanche authority to go on whatever criminal rampage he desired and do so with virtual legal impunity as long as such actions stemmed from the chain of causation started by the police misconduct, be it minor or major. In the case at bar, such a holding would have allowed defendant to summarily execute Officers Smith and Parrish with no legal accountability assuming the officers failed to fully comply with a statute such as SDCL 23A–3–5. As the Bailey court noted, "This result is too far reaching and too high a price for society to pay in order to deter police misconduct." 691 F.2d at 1017. See also United States v. Nooks, 446 F.2d 1283 (5th Cir.1971), cert. denied, 404 U.S. 945, 92 S.Ct. 299, 30 L.Ed.2d 261 (1971). The United States Supreme Court has clearly sanctioned such concepts. United States v. Ceccolini, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

The Bailey court went on to conclude that while there was a right at common law to resist unlawful arrest, in a day where there is ready access to the courts to redress police misconduct, there is no reason short of fending off unjustified bodily attack which would authorize resisting an arrest, be it legal or illegal. See also United States v. Danehy, 680 F.2d 1311 (11th Cir.1982).

---

would result in the possible destruction of evidence. Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968) (footnote 8); 21 A.L.R. Fed., supra at 852. Another exception recognized within our statute itself is "exigent circumstances." State v. Max, supra 263 N.W.2d at 688. See also Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Cf. State v. Kietzke, 85 S.D. 502, 186 N.W.2d 551 (1971).

Even under the stricter requirements of 18 U.S. C. § 3109, the duty of the officer to state his purpose is excused as a useless gesture where the arresting officer's knowledge and the belief of the defendant indicates the defendant is already aware of the purpose of the officer's visit. United States v. Kulcsar, 586 F.2d 1283 (8th Cir.1978). See also Miller, supra; U.S. v. Tracy, 835 F.2d 1267 (8th Cir.1988), cert. denied, — U.S. ——, 108 S.Ct. 1750, 100 L.Ed.2d 212 (1988). In the case at bar, Detective Kaemingk testified that in his opinion the Defendant knew a warrant would be issued for the Defendant's arrest for distribution of marijuana.

As it is no more necessary to decide whether the facts of this case fit the exceptions to compliance than it is to decide the compliance issue itself, we decline to do so.

In a case with a similar legal issue, the North Dakota Supreme Court found the officer's first attempt to stop the defendant to be illegal for lack of probable cause. However:

Indvik's independent and intervening actions of engaging the officer in a high-speed chase, running from the police officers into the woods, drawing a firearm on the police officers—and actually firing it—break the chain of causation and dissipate the taint of the prior illegality, *i.e.*, the invalid stop. [citation omitted] Indvik's independent and intervening actions subsequent to the officer's attempt to stop Indvik certainly created probable cause for his arrest on the charge of terrorizing.

*State v. Indvik*, 382 N.W.2d 623, 627–628 (N.D.1986). *See also Com. v. King*, 389 Mass. 233, 449 N.E.2d 1217 (1983).

In summary, whether the officers complied with SDCL 23A–3–5 or not, defendant's actions of assaulting Officer Parrish with a loaded shotgun and threatening to kill him when Parrish had made no move to harm defendant constituted probable cause to arrest defendant for aggravated assault. This breaks the causal connection between the entry into the home and the actions of defendant against Parrish. While this court recognizes the sanctity of the home, the right to live in peace therein and to be free from illegal governmental interference, these rights do not extend to turn a home into a free-fire zone against the police on whim. Thus, the trial court did not err when it refused to suppress the physical evidence and defendant's statements.

## ISSUE II

### WAS THERE SUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTION FOR AGGRAVATED ASSAULT?

Defendant advances three arguments why he feels there was not sufficient evidence for the jury to convict him of aggravated assault. In accordance with the dictates of SDCL 22–18–1.1(3), the court instructed the jury that the elements of the crime were:

1. That defendant at the time and place alleged did attempt to cause bodily injury to Michael Parrish.

2. That Michael Parrish was a law enforcement officer engaged in the performance of his duties at that time.

3. That defendant did not act in lawful self-defense.

This court's method of evidentiary review is well-settled. In determining the sufficiency of evidence on appeal, the test is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. In making this determination, this court must accept that evidence and the most favorable inferences that can be drawn therefrom in support of the verdict. *State v. West*, 344 N.W.2d 502 (S.D. 1984); *State v. Cook*, 319 N.W.2d 809 (S.D. 1982).

Defendant's first contention is that the facts do not establish that he attempted to cause bodily injury to Officer Parrish. An attempt is defined by SDCL 22–4–1 as where a person "attempts to commit a crime and in the attempt *does any act* toward the commission of the crime, but fails or is prevented or intercepted in the perpetration thereof...." (emphasis added). In analyzing and recognizing the deterrent effect of SDCL 22–18–1.1(3), we have held that: "We are not disposed to read these statutes in a manner that would narrow the scope of protection afforded to those who by their outward identification are engaged in the performance of their duties as law enforcement officers." *State v. Winckler*, 286 N.W.2d 313, 314 (S.D. 1979).

Defendant interprets the evidence to conclude that it establishes preparation to commit a crime only and not the actual attempt required by the statute. He relies on dictum in *State v. Wood*, 19 S.D. 260, 103 N.W. 25 (1905) for his proposition that obtaining a gun, declaring his intention to shoot someone and loading it is preparation and not an attempt.

■ In drawing a distinction between preparation and attempt, this court has held that it is not necessary that the last

further act necessary to the actual accomplishment of the crime be taken to be a requisite to make an attempt. The statutes clearly require only that "any" act towards the commission of the crime be done. *State v. Martinez,* 88 S.D. 369, 220 N.W.2d 530 (1974). Any unequivocal act by defendant to insure that the intended result was a crime and not another innocent act constitutes an attempt. "The line between preparation and attempt is drawn at that point where the accused's acts no longer strike the jury as being equivocal but unequivocally demonstrate that a crime is about to be committed." *Martinez,* 88 S.D. at 372, 220 N.W.2d at 531.

■ Here defendant aimed a .12 gauge shotgun approximately two to three feet from the officer's chest. Defendant pumped a three inch magnum shell containing number two shot into the chamber and announced he was prepared to shoot the officer. The safe was off and his finger was on the trigger. The only remaining act was to pull the trigger, sending the shot two to three feet into the officer's chest. To require that this last further act be taken to accomplish an attempt is clearly contrary to the authority cited above. Based on the facts of this case, to require the gun to be fired would equate attempted bodily injury upon a police officer under SDCL 22–18–1.1(3), with attempted or actual homicide under SDCL ch. 22–16.

In analyzing the facts, the jury was well justified in finding defendant's actions had gone " 'so far that they would result in the accomplishment of the crime unless frustrated by extraneous circumstances.' " *Martinez,* 88 S.D. at 372, 220 N.W.2d at 531 (quoting *State v. Judge,* 81 S.D. 128, 133, 131 N.W.2d 573, 575 (1964)). Such a determination would be in accord with the dictum of *State v. Wood,* relied upon by defendant, in that *Wood* recognizes "some" movement made by the person to use the weapon to be an attempt. *Wood* does not require that the gun be fired.

■ The second point advanced by defendant pursuant to this issue is that Offi-

cer Parrish was not engaged in the performance of his duties at the time of this incident. Defendant argues that the facts establish that the officers did not comply with the requirements of SDCL 23A–3–5 in entering his home, and thus, they were outside the scope of their employment or duties. Defendant acknowledges that this court has adopted the test set forth in *United States v. Heliczer,* 373 F.2d 241, 245 (2d Cir.1967), *cert. denied,* 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967):

> 'Engaged in ... performance of official duties' is simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of his own. It cannot be said that an agent who has made an arrest loses his official capacity if the arrest is subsequently adjudged to be unlawful.

*State v. Cook,* 319 N.W.2d 809, 812 (S.D. 1982). Defendant invites us to reject *Cook* but provides no workable alternative. Under either the standard adopted by the majority in *Cook* or the alternative proposed by the concurrence in result, Officers Parrish and Smith were clearly acting within the scope of their duty. Therefore, it is unnecessary to reconsider this issue at this time, and it awaits a later case which could call for such a determination.

The third point advanced by defendant is that his evidence on self-defense must have created a reasonable doubt in the jury. In actuality, he simply complains about which of two stories the jury believed. His contention to the jury must have been [5] that he lawfully released the shotgun to Officer Parrish, and that all action prior to that was lawful. The state presented evidence to the contrary; the jury convicted. It is not within the province of this court to disturb reasonable inferences made by the jury. This court will not invade jury determinations as to what doubt was or was not created in its collective mind. *State v. Faehnrich,* 359 N.W.2d 895 (S.D.1984);

---

**5.** Neither opening statements nor closing arguments were made part of the record. There-

fore, it is difficult to surmise the precise arguments made to the jury.

*State v. McCafferty*, 356 N.W.2d 159 (S.D. 1984).

## ISSUE III

DID THE TRIAL COURT ERR IN REJECTING THE INSTRUCTION PROPOSED BY THE DEFENDANT REQUIRING ACQUITTAL IF THE EVIDENCE OF JUSTIFICATION WAS SUFFICIENT TO CREATE A REASONABLE DOUBT IN THE MINDS OF THE JURY?

■ Defendant proposed an instruction raising the defense of justification which was rejected by the trial court. In the case of aggravated assault, justification and self-defense are one and the same. *State v. Mier*, 74 S.D. 515, 55 N.W.2d 74 (1952).

■ Jury instructions are to be considered as a whole, and if they correctly state the law and so inform the jury, they are sufficient. *State v. Fox*, 313 N.W.2d 38 (S.D.1981). Here, the trial court's instructions correctly state the law on self-defense in this jurisdiction.

■ In actuality, any claimed error which may have been made in excluding this instruction would be harmless as defendant was entitled to no instructions on self-defense. In the context of the facts of this case, SDCL 22–18–4 authorizes the use of force necessary to defend one's self only from *unlawful* force in situations of imminent necessity. *State v. Rich*, 417 N.W.2d 868 (S.D.1988). As has been already determined by this court, Officers Parrish and Smith visited no unlawful force upon defendant.

Even accepting defendant's version of the facts to the exclusion of the officers', he still cannot claim such a defense in a situation he instigated and refused to disengage until physically overcome.

The evidentiary basis for a self-defense instruction must be squared with this court's prior statements on situations where the evidence indicates that the defendant was the aggressor. In *State v. Means*, 276 N.W.2d 699 (S.D.1979), this court cited with approval *Dawkins v. Commonwealth*, 186 Va. 55, 41 S.E.2d 500 (1947), which held that "conditions brought about by one's own conduct may not be relied upon to invoke the excuse of self-defense." *Id.* at 701. Later in *Means, supra*, this court stated that "the result of his conduct was to invite a confrontation; he thereby precluded himself from claiming that he had a legal excuse, i.e., self-defense or coming to the defense of another(.)"

*Rich, supra* at 872. *See also State v. Fender*, 358 N.W.2d 248 (S.D.1984).

## CONCLUSION

We have carefully examined defendant's other issues of purported error and find them to be without merit or already disposed of herein. The conviction of defendant for aggravated assault is affirmed.

MORGAN, SABERS and MILLER, JJ., concur.

HENDERSON, J., concurs in result.

GILBERTSON, Circuit Judge, sitting for WUEST, C.J., disqualified.

HENDERSON, Justice (concurring in result).

These officers were acting under the authority of a warrant of arrest. A peaceful determination, through the judicial process of these officers' authority, is highly preferable to a potentially dangerous confrontation. Every peaceful effort was made, by these officers, to serve this warrant of arrest. They did not trigger or cause an explosive situation. Rather, the explosive situation was all the handmaiden of the appellant's own conduct. Appellant refused to be arrested, after a proper knock and announce effort by the officers. The point is: These officers were legally on the appellant's premises, pursuant to their authority and were acting under the command of a judicial officer, via an arrest warrant.

I still cannot bring myself to adopting the test in *United States v. Heliczer*, cited in the majority opinion, adopted in *State v. Cook*, cited in the majority opinion, and to

which I took an exception, which exception still remains.