STATE of South Dakota, Plaintiff
and Appellee,

v.

Ernest H. HEUMILLER, Defendant
and Appellant.

No. 13445.

Supreme Court of South Dakota.

Considered on Briefs Nov. 17, 1981.

Decided March 3, 1982.

Jeff Hallem, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

C. Joseph Neiles, Sioux Falls, for defendant and appellant.

FOSHEIM, Justice.

Ernest H. Heumiller appeals his conviction of aggravated assault. We affirm.

While Deputy Sheriff Mark Norris was patrolling near Bridgewater, South Dakota, about 8:45 p. m. on October 27, 1980, he observed, followed, and stopped a car weaving on the road. As Norris approached the stopped vehicle, appellant exited from the passenger side, and rapidly came towards him, while shouting obscenities. He then began pushing the deputy to prevent him from reaching the driver's side of the stopped car. He hit the officer on the side of the head with his fist. The deputy then returned to the patrol car and obtained his night stick. Ernest again threatened the

deputy and Norris struck him in the stomach with his stick. Deputy Norris was then able to get around his assailant and approach the driver, the appellant's brother, who was then getting out of his car. Ernest again yelled at the deputy and went after him. As Ernest lunged, Officer Norris hit him on the leg and Ernest fell to the ground.

Appellant returned to the passenger side of their vehicle. Deputy Norris meanwhile administered a field sobriety test to the driver and arrested him for driving while intoxicated. Appellant again came out of the car—this time with a pump-type shotgun and said, "We are going to get rid of this F-Monkey—Now we got him, we are going to get rid of him." He shouldered the shotgun and pointed it at the deputy with his finger on the trigger, and said "we've got him now." While using the driver of the vehicle as a shield, Norris tried to reason with Ernest. As they approached the rear of the car, the appellant pointed the shotgun toward the ground. The deputy grabbed the gun with his right hand and they wrestled for it. Eventually Norris decided he could not overcome both antagonists and, out of fear the gun might discharge, he told Ernest he was going to let him go and back off, which he did. All parties then returned to their respective vehicles.

Appellant and his brother proceeded to drive to their farm. The deputy followed. At one point Ernest sat out of the car window and pointed the shotgun at the patrol car.

Upon arriving at the farm, Ernest Heumiller got out of the car, carrying the shotgun. He opened the gate, let his brother drive through, shut the gate, and returned to the car. They then drove to the farm house. Meanwhile, Deputy Norris had radioed for help and Deputy Sheriff Hartman arrived. Ernest and his brother got out of the car and the law enforcement officers, using the PA system, advised them not to enter the house. The appellant nevertheless entered the house with the shotgun. He immediately returned without the gun but left a light on in the kitchen. By this time Sheriff Taylor had arrived on the scene. The brothers then both came over to the gate and were arrested, searched, handcuffed, given their rights, and placed in the patrol car.

Sheriff Taylor and Deputy Norris then entered the house. No one else was seen in the house but two guns were found behind the kitchen door. Loaded shells were found in both the magazine and chamber of the gun seized and identified as the weapon used. The gun and shells were received in evidence.

The first question presented is whether the shotgun and shells taken in the warrantless search of appellant's home should have been suppressed as the fruits of an unreasonable search and seizure. It is appellee's position that exigent circumstances sufficient to justify the warrantless search under the "emergency doctrine" rendered the shotgun admissible evidence.

■ The Fourth Amendment to the United States Constitution, and Art. VI, § 11, of the South Dakota Constitution, both grant the people the right to be secure in their persons, homes, papers, and effects against unreasonable searches and seizures. Accordingly, warrantless arrests and searches "are unconstitutional, unless there is a showing by those who seek exemption from the warrant requirement that their actions were reasonable, based on probable cause, and that the exigencies of the situation made the course imperative." *State v. Max,* 263 N.W.2d 685, 687 (S.D.1978).

Justice Marshall, writing for the United States Supreme Court recently stated in *Steagald v. United States,* 451 U.S. 204, 211–12, 101 S.Ct. 1642, 1647–48, 68 L.Ed.2d 38 (1981):

Except in such special situations, we have consistently held that the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant. See *Payton v. New York,* 445 U.S. 573 [100 S.Ct. 1371, 63 L.Ed.2d 639] (1980); *Johnson v. United States,* 333

U.S. 10, 13–15 [68 S.Ct. 367, 368–370, 92 L.Ed. 436] (1948). Thus, as we recently observed: "[I]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York, supra,* [445 U.S.] at 590 [100 S.Ct. at 1382]. See *Coolidge v. New Hampshire,* 403 U.S. 443, 474–475, 477–478 [91 S.Ct. 2022, 2042–43, 2043–44, 29 L.Ed.2d 564] (1971); *Jones v. United States,* 357 U.S. 493, 497–498 [78 S.Ct. 1253, 1256–1257, 2 L.Ed.2d 1514] (1958); *Agnello v. United States,* 269 U.S. 20, 32–33 [46 S.Ct. 4, 6–7, 70 L.Ed. 145] (1925)

■ Thus, "an officer may legally search premises without a warrant under limited circumstances such as . . . an emergency where there is no time to get a warrant and the situation demands immediate action[.]" *State v. Cundy,* 86 S.D. 766, 201 N.W.2d 236, 239 (1972); *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *McDonald v. United States,* 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948).

■ In *State v. Max, supra,* at 687, we set forth guidelines to consider when deciding whether exigent circumstances exist to justify a warrantless search. We noted that the "exigent circumstances doctrine is to be applied to the facts as perceived by the police at the time of entry, not as subsequently uncovered." We also note that a warrantless search must be " 'strictly circumscribed by the exigencies which justify its initiation.' " *Mincey v. Arizona,* 437 U.S. 385, 393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978) (*quoting Terry v. Ohio,* 392 U.S. 1, 25–26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968)).

■ When these standards are applied, this search does not emerge as justified by any emergency or exigent circumstances. The officers were not in hot pursuit. Both appellant and his brother were handcuffed in the patrol car when the Sheriff and Deputy Norris entered the house.

■ Appellee argues that the search was nevertheless justified because the officers at the scene did not know if other people were in the house and in view of what had occurred, they properly entered the house and removed the gun to secure their safety. In *Mincey v. Arizona, supra,* 437 U.S. at 392, 98 S.Ct. at 2413, the United States Supreme Court said: "We do not question the right of the police to respond to emergency situations. . . . 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' " That argument, however, likewise fails for want of supporting facts as Deputy Norris searched only the kitchen, where he discovered two guns behind the door. He examined and seized one gun. The other gun was neither examined nor seized. This indicates the intrusion was motivated to get the shotgun for evidentiary purposes rather than for personal safety. Without more, the commission of a felony plus probable cause to believe evidence would be found within the house does not constitute exigent circumstances. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (citing *Dorman v. United States,* 435 F.2d 385 (D.C.Cir.1970)). Neither may the search be upheld as incidental to an arrest as the arrests were made some 500 feet from the farm house. A search incident to an arrest must be substantially contemporaneous with, and confined to, the immediate vicinity of the arrest. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (citing *Agnello v. United States,* 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925)). Furthermore, that there may be some delay or inconvenience in getting a search warrant is not a valid reason for averting the constitutional requirements. *McDonald v. United States, supra* (citing *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948)).

Consequently, we conclude that the evidence obtained was the result of an unreasonable search and seizure.

■ Did then the introduction and receipt of that evidence at the trial constitute prejudicial error? SDCL 23A–44–14 defines harmless error as "[a]ny error, defect, irregularity or variance which does not affect substantial rights[.]" *See also: State v. Branch*, 298 N.W.2d 173 (S.D.1980). Even an error involving the denial of a constitutional right can be harmless, not requiring the automatic reversal of a conviction, provided the court is able to declare a belief beyond a reasonable doubt that it was harmless and did not contribute to the verdict obtained. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Accord: State v. Reiman*, 284 N.W.2d 860 (S.D.1979); *State v. Parker*, 263 N.W.2d 679 (S.D.1978).

In *Chapman, supra,* the United States Supreme Court stated:

We are urged by petitioners to hold that all federal constitutional errors, regardless of the facts and circumstances, must always be deemed harmful. Such a holding as petitioners correctly point out, would require an automatic reversal of their convictions and make further discussion unnecessary. We decline to adopt any such rule. All 50 States have harmless-error statutes or rules, and the United States long ago through its Congress established for its courts the rule that judgments shall not be reversed for "errors or defects which do not affect the substantial rights of the parties." 28 U.S.C. § 2111.[5] None of these rules on its face distinguishes between federal constitutional errors and errors of state law or federal statutes and rules. All of these rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have *little, if any, likelihood of having changed the result of the trial.*

We conclude that there may be some constitutional errors which in the setting of a particular case are so *unimportant and insignificant* that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.

. . . .

We, therefore, do no more than adhere to the meaning of our *Fahy* [*v. State of Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171] case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

386 U.S. at 21–22, 24, 87 S.Ct. at 827, 828 (emphasis added).[1]

In *Harrington, supra,* the United States Supreme Court stated:

The question whether the alleged error in the present case was "harmless" under the rule of *Chapman* arose in a state trial for attempted robbery and first-degree murder. Four men were tried together— Harrington, a Caucasian, and Bosby, Rhone, and Cooper, Negroes—over an objection by Harrington that his trial should be severed. Each of his three codefendants confessed and their confessions were introduced at the trial with limiting instructions that the jury was to consider each confession only against the confessor. Rhone took the stand and Harrington's counsel cross-examined him. The other two did not take the stand.

In *Bruton v. United States*, 391 U.S. 123, [88 S.Ct. 1620, 20 L.Ed.2d 476] a confession of a codefendant who did not take the stand was used against Bruton in a federal prosecution. We held that Bruton had been denied his rights under

---

1. Footnote 5, indicated in the above quote, reads as follows.

28 U.S.C. § 2111 provides:

"On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."

Fed.Rule Crim.Proc. 52(a) provides:

"Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

See also Fed.Rule Civ.Proc. 61.

the Confrontation Clause of the Sixth Amendment. Since the Confrontation Clause is applicable as well in state trials by reason of the Due Process Clause of the Fourteenth Amendment (*Pointer v. Texas*, 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923] the rule of *Bruton* applies here.

. . . .

We do not depart from *Chapman*; nor do we dilute it by inference. We reaffirm it. *We do not suggest* that, if evidence bearing on all the ingredients of the crime is tendered, the *use of cumulative evidence, though tainted, is harmless error.* Our decision is based on the evidence in this record. The case against Harrington was not woven from circumstantial evidence. It is so overwhelming that unless we say that no violation of *Bruton* can constitute harmless error, we must leave this state conviction undisturbed.

395 U.S. at 252, 254, 89 S.Ct. at 1727, 1728–29 (emphasis added, footnote omitted).

■ Appellant was charged under SDCL 22–18–1.1(5), which states: "Any person who: . . . Attempts by physical menace with a deadly weapon to put another in fear of eminent [sic] serious bodily harm; is guilty of aggravated assault." "Deadly weapon" is defined in SDCL 22–1–2(9) as "any firearm, knife or device, instrument, material or substance, whether animate or inanimate, which is calculated or designed to inflict death or serious bodily harm, or by the manner in which it is used is likely to inflict death or serious bodily harm." SDCL 22–1–2(15) describes a firearm as "any weapon from which a projectile or projectiles may be discharged by gunpowder." Judicial notice can be taken that at close range, a shotgun is a dangerous and deadly weapon. *State v. Sutterfield*, 22 S.D. 584, 119 N.W. 548 (1909).

■ SDCL 22–18–1.1(5) (aggravated assault) must be viewed from the perspective of the victim. The gravamen of that offense is the fear it instills in the mind of the victim who ordinarily does not know whether the firearm is in fact loaded. It is that unknown, however, which perpetrates the fear. Conversely if the victim knows the firearm is not loaded, then it is likely less than a deadly weapon. Absent that knowledge the victim must assume that a weapon, deadly by design, is in fact ready to dispense instant death. Subsequent knowledge that the firearm was not loaded does nothing to diminish the fear the victim experienced at the time of the assault. Consequently, in the absence of evidence that the victim knew the gun was unloaded, it is deemed loaded for the purposes of proving the element of fear and any evidence bearing in retrospect on whether it was loaded or unloaded is irrelevant.

■ Since the deadly weapon element only requires proof that the defendant used a shotgun, the appearance of a shotgun and how it was used in the assault need not have been demonstrated. It was not necessary to identify a specific gun in order to connect the defendant with the criminal act. If the prosecution felt it necessary to introduce a tangible object to show the appearance of a shotgun or to demonstrate how it was used by the defendant, that purpose could have been effected with a similar firearm. *Davis v. Walter*, 259 Iowa 837, 146 N.W.2d 247 (1966); *Rich v. Cooper*, 234 Or. 300, 380 P.2d 613 (1963); 32 C.J.S. *Evidence* §§ 601–02, 605 (1964). The primary consideration, however, is that overwhelming eyewitness testimony was offered by the State to prove the use of a deadly weapon. Deputy Norris testified that the defendant threatened him with a shotgun and Deputies Norris and Hartman testified they saw the defendant enter the house with a gun and return without it. It appears from the testimony that Sheriff Taylor also made that observation. In the face of this eyewitness evidence the only potential significance of the seized shotgun and shells was to show that the gun used in the assault was likely loaded. However, as stated above, the gravamen of the offense is not whether the gun was in fact loaded, but whether the shotgun was used to put the victim in fear of imminent serious bodily injury. SDCL 22–18–1.1(5); SDCL 22–

1–2(9); *See generally: State v. Westphal,* 273 N.W.2d 155 (S.D.1978); [2] *State v. Mier,* 74 S.D. 515, 55 N.W.2d 74 (1952); *State v. Wiley,* 52 S.D. 110, 216 N.W. 866 (1927).[3] For these reasons we believe the admission of the illegally seized evidence was beyond a reasonable doubt harmless error.

Appellant contends the trial court erred in denying his requested instructions that SDCL 22–18–1(4) (simple assault) be given as a lesser offense included in SDCL 22–18–1.1(5) (aggravated assault). SDCL 22–18–1(4) states: "Any person who: ... Attempts by physical menace to put another in fear of imminent serious bodily harm, with or without the actual ability to seriously harm the other person; is guilty of simple assault."

In *State v. Oien,* 302 N.W.2d 807, 808–809 (S.D.1981), we said:

Under the law as established in this state, it is incumbent upon the trial court to instruct the jury, if requested, upon a lesser offense included in the offense charged if the evidence warrants a conviction upon the included offense. *State v. Crofutt,* 76 S.D. 77, 72 N.W.2d 435 (1955). There are two tests that must be satisfied in determining whether the trial court should submit a lesser included offense instruction to the jury. The first is a legal test, the second is factual. We conclude that neither test has been satisfied here.

In order to meet the legal test of a necessarily included offense, (1) the elements of the included offense must be fewer in number than the elements of the greater offense, (2) the penalty for the included offense must be less than the greater charged offense, and (3) the two offenses must contain common elements so that the included offense must be such that the greater offense cannot be committed without also committing the lesser. *State v. Kafka,* 264 N.W.2d 702, 705

(S.D.1978). (Zastrow, J., concurring specially.)

. . . .

Neither has appellant satisfied the factual test, which we have described as follows:

"Where a request has been made to charge the jury on a lesser-included offense, the duty of the trial judge is determined by the evidence. If evidence has been presented which would support a conviction of a lesser charge, refusal to give the requested instruction would be reversible error. (citations omitted) There must be sufficient evidence, however, when read in the light most favorable to the defendant, which would justify a jury in concluding that the greater offense was not committed and that a lesser offense was, in fact, committed." *People v. Karasek,* 1975, 63 Mich.App. 706, 234 N.W.2d 761.

A defendant may be charged and tried for assault with a dangerous weapon and found guilty of simple assault. *State v. Mier, supra; State v. Wiley, supra.* While we recognize that *Mier* and *Wiley* were decided under assault statutes substantially different from those here considered, we can assume, for the purposes of this opinion, that the legal test has been met. However, the defendant failed to meet the requirements of the factual test. In *State v. Feuillerat,* 292 N.W.2d 326, 334 (S.D.1980) (citations omitted), we said:

The trial court is not required to instruct the jury even as to those offenses which might be included, but which the evidence would not warrant.

The evidence herein is amply sufficient to show murder. An instruction on simple assault is not required unless there is some evidence which fairly raises an issue as to such lesser offense. We find no

---

**2.** *Westpahl* overlooked our statutory definition of a deadly weapon (SDCL 22–1–2(9)) and that decision is expressly modified to the extent it indicates there is a fact question whether a gun is a deadly weapon in the absence of a statutory definition.

**3.** For a discussion of the rule in other jurisdictions, see 6 Am.Jur.2d *Assault and Battery* § 34 (1963) and Annot., 79 A.L.R.2d 1420 (1961).

evidence in the record which would fairly raise such an issue.

"[A] determination of whether an instruction on a lesser included crime should be given to a jury is not solved by merely determining the crime charged includes the lesser offense because juries are not to be given the discretion or freedom to pick and choose what offense the accused should be found guilty of."

 The record is devoid of evidence which would fairly raise the issue of simple assault, but not aggravated assault. Hence the trial court did not err in refusing to instruct on SDCL 22–18–1(4) as a lesser included offense because "[u]nder no reasonable view of the evidence would a conviction of the offense ... have been warranted." *State v. Kafka*, 264 N.W.2d 702, 703 (S.D.1978). Appellant was either guilty as charged (assault with a dangerous weapon) or he was not guilty of anything. *State v. Oien, supra; See also: State v. Wilson*, 297 N.W.2d 477 (S.D.1980); *State v. O'Connor*, 86 S.D. 294, 194 N.W.2d 246 (1972).

The judgment of conviction is affirmed.

. All the Justices concur.