STATE of South Dakota, Plaintiff
and Appellee,

v.

Brian Paul SCHOLTEN, Defendant
and Appellant.

No. 16317.

Supreme Court of South Dakota.

Considered on Briefs May 25, 1989.

Decided Aug. 30, 1989.

Roger A. Tellinghuisen, Atty. Gen. and Frank Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Steve Miller, Sioux Falls, for defendant and appellant.

## PROCEDURAL HISTORY/ISSUES

HENDERSON, Justice.

Defendant/Appellant Brian P. Scholten (Scholten) was indicted, by the Minnehaha County Grand Jury, with two counts of aggravated assault, based on events which grew out of an altercation between Dale Larson (Larson) and Scholten, Robert C. Gillespie (Gillespie) and Ronald J. Marr (Marr) in a Sioux Falls parking lot. Scholten and Gillespie were tried together and were both convicted of one count of aggra-

vated assault under SDCL 22–18–1.1(4).[1] Marr was convicted, in a separate jury trial, of two counts of aggravated assault. Scholten appeals both the conviction and restitutional aspect of his sentence, alleging that the trial court erred in three regards:

1. Refusal to instruct the jury that simple assault was a lesser included offense of which Scholten could be convicted;

2. Refusal of proposed self-defense instructions; and,

3. Ordering Scholten to execute a confession of civil judgment in Larson's favor for all medical bills, dental bills, and out-of-pocket expenses.

We affirm Scholten's conviction, determining that his arguments regarding Issues I and II are unsound. However, we reverse the trial court on Issue III, as was done in defendant Gillespie's separate appeal, *State v. Gillespie*, 445 N.W.2d 661 (S.D.1989), handed down August 30, 1989. Marr's appeal did not raise the restitutional issue, and his conviction was affirmed by order, dated February 22, 1989, without writing, on an expedited basis.

## FACTS

In the early morning hours of October 17, 1987, Dale Larson drove his car to a parking lot in the vicinity of the Pomp Room, a Sioux Falls bar. Larson became embroiled in an altercation with Scholten, Marr and Gillespie which resulted in Larson's being beaten and kicked to a point near death. At trial, Larson could not remember the assault. The accounts of the various defendants disagree as to how the fight started; Gillespie told police that he and Scholten went to help Marr, who was arguing with Larson, whereas Scholten testified that Marr came to the aid of Gillespie and himself.

According to Scholten's trial testimony, he and Gillespie left the Pomp Room at approximately 1:45 a.m., shortly before the Pomp Room closed. They entered the parking lot together, and were nearly hit by Larson's car. Gillespie made an obscene hand gesture, and Larson started his car forward, stopping just short of where they were standing. Tempers flared and Larson stepped out of his car. Larson went to the trunk of his car, and Scholten said: "Hey, man, you ain't going to the trunk and getting a weapon, man. You ain't pulling a gun." Scholten then approached Larson at the car's trunk and shoved him. Gillespie closed in, and Marr ran up from across the street. Larson started to return to the driver's door, and Scholten turned away, thinking the matter was ended. Then, per Scholten, Larson went back to the trunk, opened it, and pulled out a gun. Scholten, at trial, testified that he then ran 50 or 60 feet from Larson, who was threatening to blow someone's head off, but went back to help his friends, although he told police that the three of them returned only after they realized Larson was not going to shoot. At trial, Scholten testified that Larson pointed the gun at him and Gillespie, then "in a heartbeat," Marr punched Larson from the side, and grabbed him. Gillespie hit Larson with his hand.[2] According to Scholten, he landed two running kicks in Larson's face and mouth, having approached Larson like he was kicking-off in a football game. Scholten asserted that his second kick knocked Larson out, and Larson went down, with Marr falling on top of Larson. Scholten testified that they stopped hitting or kicking Larson immediately. Scholten opined that only five to seven seconds elapsed between Marr's initial contact with Larson and the end of the fight. Scholten then sat in Larson's car, intending to wreck it. At Gillespies' urging, however, Scholten exited the car without damaging it.

1. SDCL 22–18–1.1(4) provides that any person who "[a]ssaults another with intent to commit bodily injury which results in serious bodily injury" is guilty of aggravated assault, a Class 3 felony.

2. Gillespie denied making contact with Larson.

Three other eyewitnesses, Pat Stauffacher, Angie Bresee and Jodi Pollman, told a sharply different account. None saw Larson brandish a gun. All three testified that Larson was beaten and kicked repeatedly while he lay unconscious on the ground. Stauffacher testified that he saw Larson's eyes rolled back in his head while Scholten and Gillespie "literally kicked the shit out of him." Bresee saw Scholten pull his leg back before each hard kick to Larson's torso, although she did not see the earlier stages of the altercation. Bresee also testified that Marr shoved the gun into Larson's mouth and kicked it. Pollman also observed Larson being knocked out and Scholten and Gillespie continuing to kick him in the chest and torso. Pollman called 911 for an ambulance.

Larson was taken to McKennan Hospital's emergency room, where he was almost dead on arrival. According to Dr. Stephen Billion, Larson later nearly died on the operating table when surgeons attempted to drain internal bleeding in the sac surrounding his heart, a condition known as cardiac tamponade. Billion opined that Larson, whose heart stopped twice during the effort to save him, would have expired without immediate assistance. He further testified that Larson's injuries were most consistent with being kicked repeatedly by a number of individuals, and that the proposition that Marr's fall on top of Larson caused his serious injuries was unlikely. In addition to cardiac tamponade, Larson's palate was shattered, his right cheekbone broken, three teeth chipped, one tooth knocked out, a fractured rib punctured a lung causing it to collapse, and a boot print was impressed on the side of his head. Five and one half months after injury, Larson was still unable to return to work.

## DECISION

### I. Jury Instructions (Issues 1 and 2)

Scholten argues that the trial court erred in not instructing the jury that simple assault was a lesser included offense and in rejecting proffered instructions on self-defense. We reject both arguments.

■ Scholten's first argument fails because there was insufficient evidence to support jury instructions on simple assault.[3] However, "[t]he trial court must instruct the jury upon a lesser included offense if the evidence presented would support a conviction on the lesser charge." State v. Rich, 417 N.W.2d 868, 870 (S.D. 1988). "[T]he trial court is not required to instruct the jury even as to those offenses which might be included, but which the evidence would not warrant." State v. Feuillerat, 292 N.W.2d 326, 334 (S.D.1980). "There must be sufficient evidence, however, when read in the light most favorable to the defendant, which would justify a jury in concluding that the greater offense was not committed and that a lesser offense was, in fact, committed." Rich, at 871. "The evidence must throw doubt upon the greater offense." Id, (quoting Feuillerat, and State v. Melvin, 49 Wis.2d 246, 252, 181 N.W.2d 490, 494 (1970)). The facts of this case established that truly massive, near-fatal injury was inflicted upon Larson. Three independent eyewitnesses testified that Scholten repeatedly kicked Larson as he lay unconscious. This evidence, combined with medical testimony that Larson's injuries were most consistent with prolonged kicking by a number of assailants, removes any doubt that Scholten was guilty of aggravated assault rather than simple assault.

■ Because there is insufficient evidence to raise doubt that simple assault was committed rather than aggravated assault, we do not consider whether the legal

---

**3.** Simple assault is defined in SDCL 22–18–1:
Simple assault. Any person who:
(1) Attempts to cause bodily injury to another, other than a law enforcement officer engaged in the performance of his duties, and has the actual ability to cause the injury;
(2) Recklessly causes bodily injury to another;
(3) Negligently causes bodily injury to another with a dangerous weapon;

(4) Attempts by physical menace to put another in fear of imminent serious bodily harm, with or without the actual ability to seriously harm the other person; or
(5) Intentionally causes bodily injury to another which does not result in serious bodily injury; is guilty of simple assault. Simple assault is a Class 1 misdemeanor.

test[4] for necessarily included offenses has been met.

■ We likewise disagree with Scholten's argument that the trial court erred in rejecting jury instructions concerning self-defense, proposed by Gillespie and himself. In so holding, we note that this Court, in *State v. Gillespie*, 445 N.W.2d 661, handed down August 30, 1989, deemed the substance of Gillespie's proffered instructions to be embodied in those actually given to the jury. Scholten's refused instruction founders on the same rock as Gillespie's: It is substantively the same as those instructions which were given.

Scholten asserts that an additional sentence in his instruction ("The defendant is not required to nicely gauge or measure the force used in self-defense, but he may use any means that appear reasonably necessary.") was essential to the jury's deliberations. This is unsound, as the extra words are merely a restatement of the concept, explicit in the trial court's instructions, that force used in self-defense must be reasonable. When the instructions to the jury in this action are viewed as a whole, we find that they adequately present the law without prejudicing the defendant. *State v. Fox*, 313 N.W.2d 38, 41 (S.D.1981); *State v. Poss*, 298 N.W.2d 80, 84 (S.D.1980).

## II. *Confession or Entry of Judgment as Restitution*

■ Scholten's last argument, that error lay in requiring him, as a condition of suspended sentence, to "confess a judgment for the entire amount of victim's medical bills, dental bills and out-of-pocket expenses from this incident" (quoted from his Judgment and Sentence, signed June 10, 1988), is also a reprise of one considered in *State v. Gillespie*, 445 N.W.2d 661, handed down August 30, 1989. On this issue, as in *Gillespie*, we reverse.

Essentially, this condition sidestepped and undercut the comprehensive restitution scheme constructed by the state legislature in SDCL chs. 22–6, 23A–27, and 23A–28, interpreted in *State v. Wolff*, 438 N.W.2d 199 (S.D.1989), to contain essential due process protection. We note that restitution in conjunction with suspended sentence is directly addressed in SDCL 23A–28–3. Further, any victim of a criminal defendant dissatisfied with court-ordered restitution has, as his exclusive remedy, a civil action against such defendant under SDCL 23A–28–6. There is under our current restitution scheme, a statutory boundary between civil judgment and criminal restitution which has been crossed in this case.

■ In view of the above analysis, we also reverse the trial court's imposition of a condition for suspended sentence which provided "[t]hat the defendant enter a judgment for ⅓ of the medical and dental expenses and loss of wages to the victim." (quoted from Scholten's Judgment and Sentence). Unlike *Gillespie*, wherein the defendant was directed to "pay ⅓ restitution", the entire restitutional aspect of Scholten's sentence was contrary to our statutes and must be reconsidered on remand.

In summary, we reverse and remand only on the sentencing issue regarding entry or confession of judgment as a means of making restitution. The trial court is to resentence Scholten in accordance with this opinion and the criminal restitution statutes. Scholten's conviction, however, is affirmed.

Affirmed in part, reversed and remanded in part.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

SABERS, J., concurs specially.

---

4. The legal test for necessarily included offenses, which must be met in addition to the factual test applied above, requires: (1) the elements of the included offense are fewer in number than the elements of the greater offense, (2) the penalty for the included offense is less than the greater charged offense, and (3) the two offenses must contain common elements so that the greater offense cannot be committed without also committing the lesser. *State v. Cook*, 319 N.W.2d 809, 815 (S.D.1982).

SABERS, Justice (specially concurring).

I write specially to make it clear that:

For the purpose of determining lesser-included instructions, the evidence, whether disputed or not, *must be viewed in the light most favorable to the defendant.* *State v. Rich,* 417 N.W.2d 868 (S.D.1988). This majority opinion views the evidence in a light more favorable to the verdict (State). However, even when viewed in a light most favorable to the defendant, the evidence in this case does not support the requested lesser-included instruction. *Rich, supra.*