STATE of South Dakota, Plaintiff
and Appellee,

v.

Robert Clement GILLESPIE,
Defendant and Appellant.

No. 16267.

Supreme Court of South Dakota.

Considered on Briefs May 24, 1989.

Decided Aug. 30, 1989.

R. Shawn Tornow, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Thomas W. Parliman, P.C., Sioux Falls, for defendant and appellant.

WUEST, Chief Justice.

Defendant, Robert Clement Gillespie, appeals his conviction of aggravated assault, in violation of SDCL 22–18–1.1(4). We affirm in part and reverse in part.

In the early morning hours of October 17, 1987, Dale Larson (Larson) was severely beaten in a parking lot near a bar in Sioux Falls, South Dakota. As a result of the beating, Larson sustained severe bruises, a broken rib, and a punctured lung. A severe blow to Larson's chest ruptured blood vessels in the sac surrounding his heart. Blood then accumulated in the sac, exerting pressure on the heart and preventing it from beating properly. Larson also sustained a fractured palate which required extensive reconstructive surgery. Although at some point during the beating Larson became unconscious, he was able to receive prompt medical attention. Had he not received immediate medical treatment, Larson would have died from these injuries.

Larson's injuries were the result of an altercation involving him, defendant, and two of defendant's friends, namely, Brian Scholten (Scholten) and Ron Marr (Marr). The incident apparently occurred after defendant or Scholten flashed Larson an obviously obscene gesture in the parking lot. Larson then obtained a revolver from his car and threatened them with it. Although it is unclear as to what transpired next, Marr eventually came up from behind Larson and knocked him to the ground. Defendant, Scholten and Marr then repeatedly struck and kicked Larson. After Larson apparently lost consciousness, Marr picked up his revolver and placed it in Larson's mouth. He kicked the revolver several times, thereby causing the injury to Larson's palate.

Shortly thereafter, a police officer, Terry J. Persing (Persing), arrived at the scene and summoned an ambulance. Defendant approached Persing and attempted to relate the events which had just transpired. Because a crowd had gathered at the scene and Persing could not hear what the defendant was saying, defendant was asked to further explain the incident inside Persing's vehicle. While seated in the vehicle's front seat, defendant told Persing his version of the altercation. Persing then suggested defendant accompany him to the Minnehaha County Public Safety Building so defendant could provide a detailed explanation in the absence of a crowd. Defendant indicated that he willingly would do so. The only additional information which defendant provided at the Public Safety Building were his friends' names. After consulting with other police officers and obtaining additional information from them, Persing gave defendant *Miranda* warnings and placed him under arrest for aggravated assault.

Defendant and Scholten subsequently were tried together. On March 31, 1988, a jury entered a verdict finding both guilty of aggravated assault. The trial court entered a judgment of conviction and sentenced defendant to serve ten years in the South Dakota State Penitentiary. The sentence was suspended provided that certain conditions were met. Included among these conditions was that the defendant (1) serve six months in the Minnehaha County Jail; (2) be placed on probation for five years; and, (3) make restitution to Larson for one-third of his medical and dental bills and lost wages, and execute a confession of

judgment in favor of Larson for the full amount of such expenses.

Defendant now appeals his conviction, raising five issues. He first contends that the trial court erred in denying his proposed jury instruction on simple assault as a lesser included offense of aggravated assault. Defendant next submits that the trial court erred in refusing his proposed jury instructions regarding self-defense. In his third contention, he argues that his initial comments to Persing should have been suppressed. Defendant also claims the trial court improperly denied his motion for a new trial based upon the state's alleged failure to provide court-ordered discovery. Finally, defendant contends that the trial court erred in requiring him to execute a confession of judgment as a condition of the suspended sentence.

We first address defendant's contention that the trial court erred in denying his requested jury instruction on simple assault as a lesser included offense of aggravated assault. Defendant proposed a separate jury instruction based upon SDCL 22–18–1(5). Under this statute, a person is guilty of simple assault if he "intentionally causes bodily injury to another which *does not* result in serious bodily injury." (Emphasis supplied).

■ In *State v. Heumiller*, 317 N.W.2d 126 (S.D.1982), we stated:

Under the law as established in this state, it is incumbent upon the trial court to instruct the jury, if requested, upon a lesser offense included in the offense charged if the evidence warrants a conviction upon the included offense. There are two tests that must be satisfied in determining whether the trial court should submit a lesser included offense instruction to the jury. The first is a legal test, the second is factual.

*Id.* at 132 (citation omitted) (*quoting State v. Oien*, 302 N.W.2d 807, 808 (S.D.1981)). The legal test is met if (1) the elements of the included offense are lesser in number than the elements of the greater offense; (2) the penalty for the included offense is less than that of the greater offense; and (3) the two offenses contain common elements so that the greater offense cannot be committed without also committing the lesser offense. *Heumiller*, 317 N.W.2d at 132; *Oien*, 302 N.W.2d at 809. In *State v. Rich*, 417 N.W.2d 868 (S.D.1988), this court described the factual test as follows:

Where a request has been made to charge the jury on a lesser-included offense, the duty of the trial judge is determined by the evidence. If evidence has been presented which would support a conviction of a lesser charge, refusal to give the requested instruction would be reversible error. (Citations omitted). There must be sufficient evidence, however, when read in the light most favorable to the defendant, which would justify a jury in concluding that the greater offense was not committed and that a lesser offense was, in fact, committed.

*Id.* at 870–71 (*quoting Heumiller*, 317 N.W.2d at 132).

■ In the present case, the trial court refused to grant the defendant's lesser included offense instruction because it failed to meet the factual test. We agree with this conclusion. We have previously stated that in order for the factual test to be met, there must be conflicting evidence with regard to the element of the greater offense that is not an element of the lesser. *State v. Oien*, 302 N.W.2d 807 (S.D.1981). In applying this standard to the present case, we would have to find conflicting evidence as to the degree of harm caused by the defendant in order to support the inclusion of a lesser included offense instruction. We believe that no such conflicting evidence exists. The record shows that defendant and Scholten had kicked Larson repeatedly in the chest and upper body area. As a result of being beaten about in this area, Larson sustained two grave injuries: a punctured lung and a heart condition known as cardiac tamponade. This evidence, even when considered in the light most favorable to the defendant, overwhelmingly supports the conclusion that the defendant caused serious bodily harm to Larson. We believe that there is no sufficient evidence which conflicts with or contradicts this conclusion. Therefore, we

hold that the trial court did not err in refusing to grant the lesser included offense instruction requested by the defendant.

■ We next address the trial court's denial of the defendant's proposed instructions on self-defense. We note that the defendant concedes the instructions given by the trial court were correct in their assessment of the law of self-defense. The defendant, however, contends these instructions "did not go far enough" in determining the boundaries of self defense. Defendant asserts that the instructions should have expressly stated that the defendant, in defending himself, was acting "in the heat of passion." The defendant also asserts that the instructions should have stated that he was not required to "nicely gauge or measure" the force used in defending himself.

SDCL 22–18–4 provides, in pertinent part:

To use or attempt to offer to use force or violence upon or toward the person of another is not unlawful when committed either by the party about to be injured, or by the person in his aid or defense, in preventing or attempting to prevent an offense against his person ... provided the force or violence used is not more then sufficient to prevent such offense.

This statute is the law in South Dakota as it relates to the issue of self-defense. Jury instructions are adequate, if when considered as a whole, they correctly state the law and inform the jury. *State v. White Mountain*, 332 N.W.2d 726, 728 (S.D.1983); *State v. Traversie*, 387 N.W.2d 2, 8 (S.D. 1986). As these instructions correctly stated the law of self-defense as it exists in our state, we must conclude that such instructions were adequate. Additionally, we believe that the legal principles set forth in the defendant's proposed instructions are generally embodied in the various instructions given by the trial court. It is not error for the trial court to refuse to give jury instructions which are already embodied in other given instructions. *State v. Cook*, 319 N.W.2d 809, 814 (S.D.1982). Finally, we believe that the defendant has failed to show the trial court's denial of his proposed instructions prejudiced him in any manner since it is unlikely that the jury would have returned a different verdict if his instructions had been given. *See Cook*, 319 N.W.2d at 814. We therefore hold that the trial court did not err in refusing defendant's proposed instructions.

■ In his third contention, defendant argues that his comments to Persing should have been held inadmissible at trial because they were made prior to his receiving *Miranda* warnings. Prior to the trial, a hearing was held regarding defendant's motion to suppress these statements. The trial court found that defendant "willingly and voluntarily and without coercion" agreed to talk to Persing, got into his patrol car for that purpose, rode with him to the Public Safety Building, and, thereafter, gave information concerning the incident. The trial court concluded that nothing occurred which would "cause a reasonable person to believe that they were in custody or that their right of movement had been significantly restricted." Consequently, the trial court denied defendant's motion to suppress.

In *State v. Bruske*, 288 N.W.2d 319, 322 (S.D.1980), we stated:

The proper test in determining whether a person need be given the *Miranda* warning is not whether the investigation has focused on any particular suspect, but rather, whether the person being questioned is in custody or deprived of his or her freedom to leave.

Furthermore, this court previously set forth a number of factors to be examined in determining whether an interrogation is custodial or noncustodial. These factors include "probable cause to arrest, subjective intent of the defendant, focus of the investigation, nature of the interrogator, nature of the suspect, time and place of the interrogation, nature of the interrogation, and purpose of the investigation." *State v. McQuillen*, 345 N.W.2d 867, 870 (S.D.1984) (citation omitted).

The facts in this present case indicate that this was not a custodial situation requiring that *Miranda* warnings be given to

defendant. It is uncontroverted that the defendant approached Persing, offering to relate his version of the affray. In fact, defendant did state at the pre-trial hearing that he was anxious to do so. Defendant willingly accepted Persing's invitation to get into his vehicle to further explain the situation when the crowd prevented defendant from doing so outside. Defendant's accompanying Persing to the Public Safety Building also was voluntary. All this time, it is apparent that defendant was alleging that he was the victim in the assault and that the conversation between Persing and defendant was neither accusatory nor hostile. The purpose of Persing's investigation was merely to obtain general information regarding the altercation. Under these circumstances, we cannot say that defendant was in a custodial situation which required that *Miranda* warnings be given to him. We therefore hold that the trial court properly denied defendant's motion to suppress and admitted his voluntary comments to Persing.

■ Defendant's fourth argument is that the trial court erred in denying his motion for a new trial because of the state's alleged failure to provide Larson's "rap sheets." Defendant filed a request for discovery, requesting "any copies of arrest and conviction records, if any, of all witnesses to be introduced by prosecution." The trial court subsequently ordered the state to produce the "rap sheets." Defendant was not advised of any record pertaining to Larson. He now contends that his attorney's trial strategy would have differed if Larson's lengthy rap sheet had been provided. As supporting authority for his assertion, defendant cites *State v. Sahlie*, 90 S.D. 682, 245 N.W.2d 476 (1976).

In *Sahlie*, we stated that "once the trial court ... has ordered production of certain evidence, those orders must be expeditiously carried out and obeyed." *Id.* at 687, 245 N.W.2d at 478. In *Sahlie*, the state violated the trial court's pre-trial discovery order a number of times. Considering the accumulative effect of those violations, we determined that the defendant had not received a fair trial. We reasoned that

"[d]ue process cannot be satisfied unless the defendant is provided some opportunity to examine possible exculpatory evidence long enough before trial so as to have at least an opportunity to determine if such evidence is or is not exculpatory." *Id.*, 245 N.W.2d at 478–79. Due process requires that the state produce, upon request, evidence favorable to the defendant which is material either to guilt or to punishment. *Id.*, 245 N.W.2d at 479.

Although our holding in *Sahlie* would appear to dispose of this issue in favor of defendant, we note that not every failure to produce evidence under court order will require reversal. Implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial. *State v. Clabaugh*, 346 N.W.2d 448, 451 (S.D.1984). In addition, our decisions in *Sahlie* and *Clabaugh* indicate that the suppressed evidence must be exculpatory in order for a due process violation to exist. *See Clabaugh*, 346 N.W.2d at 450–51; *Sahlie*, 90 S.D. at 687, 245 N.W.2d at 479. In the present case, we fail to see the exculpatory nature of evidence which regarded Larson's criminal past. We further believe that such evidence would not have affected the outcome of defendant's trial. Therefore, we cannot find error in the trial court's denying defendant's motion for a new trial.

■ The defendant finally contends that the trial court erred in demanding, as a condition of probation, a confession of judgment from the defendant for the full amount of Larson's medical expenses, dental expenses and lost earnings. Our review of conditions of probation is an inquiry to see if those conditions are legal and reasonable. *White Eagle v. State*, 280 N.W.2d 659, 660 (S.D.1979); *State v. Marshall*, 247 N.W.2d 484, 486 (S.D.1976). We believe that that portion of the condition of probation which requires the defendant to confess judgment must be stricken because it fails to satisfy our legal inquiry.

In our analysis of this issue, we note that the statutes of South Dakota provide a fairly comprehensive victim restitution scheme. Restitution is defined as full or

partial payment of pecuniary damages to a victim [of a crime.] SDCL 23A–28–2(4). Statutes on restitution appear in SDCL chs. 22–6, 23A–27, and 23A–28, which are respectively entitled: "Authorized Punishments," "Sentence and Judgment," and "Restitution to Victims of Crime." Embodied in our restitution statutes, as well as in case law, are certain limitations and procedural requirements which must be adhered to in order to protect the rights and interests of all parties. *See State v. Wolff,* 438 N.W.2d 199 (S.D.1989). Considering these facts, we believe that if a criminal offender is to be held responsible for the full or partial payment of pecuniary damages to the victim of his crime, then such must be done by and through our restitution statutes and not by means of a confession of judgment. Therefore, we conclude that this portion of the condition of probation fails to satisfy our legal inquiry.

We affirm the trial court's judgment with one exception, namely, that portion of the judgment which requires, as a condition of probation, that the defendant confess judgment to Larson for the full amount of Larson's pecuniary damages.

MORGAN and MILLER, JJ., concur.

HENDERSON, J., concurs with a writing.

SABERS, J., specially concurs.

HENDERSON, Justice (concurring).

Gillespie repeatedly kicked the victim in the chest. Victim, unconscious on the ground, was brutally beaten as he lay on the ground and Gillespie kicked the unconscious victim into an almost lifeless state. A tube was inserted in the victim's chest to drain the fluid surrounding his heart. Through the miracle of modern medicine, a cardiothoracic surgeon saved the victim's life. Gillespie was either guilty, as charged, of aggravated assault or not guilty of any offense at all. *State v. Oien,* 302 N.W.2d 807, 809 (S.D.1981).

The special concurrence is bewildering in light of the settled law of this state, the facts of this case and the well written opinion of the Chief Justice. There was a serious bodily injury under the language of SDCL 22–18–1.1(4). There was simply no conflicting evidence to establish simple assault. Simple assault is a lesser included offense of aggravated assault. Judge Hurd would have made a serious mistake had he instructed on simple assault. Authority abounds in this Court to support his decision. *State v. Wilson,* 297 N.W.2d 477, 482 (S.D.1980); *State v. Poss,* 298 N.W.2d 80, 82 (S.D.1980); *State v. O'Connor,* 265 N.W.2d 709, 716 (S.D.1978).

Lastly, in supporting the majority writing, I note this sentence: "This evidence (punctured lung and heart condition), even when considered *in the light most favorable to the defendant,* overwhelmingly supports the conclusion that the defendant (Gillespie) caused serious bodily harm to Larson." (emphasis supplied mine).

SABERS, Justice (specially concurring).

I write specially to make it clear that:

For the purpose of determining lesser-included instructions, the evidence, whether disputed or not, *must be viewed in the light most favorable to the defendant. State v. Rich,* 417 N.W.2d 868 (S.D.1988). This majority opinion views the evidence in a light more favorable to the verdict (State). However, even when viewed in a light most favorable to the defendant, the evidence in this case does not support the requested lesser-included instruction. *Rich, supra.*