#27445-a-DG

**2016 S.D. 41**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

        v.

STEVEN PURSLEY,                          Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEFF W. DAVIS
Judge

* * * *

MARTY J. JACKLEY
Attorney General

KELLY MARNETTE
Assistant Attorney General
Pierre, South Dakota                          Attorneys for plaintiff
                                              and appellee.


ERIC D. WHITCHER of
Pennington County
  Public Defender's Office
Rapid City, South Dakota                          Attorneys for defendant
                                              and appellant.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 30, 2015

OPINION FILED **05/11/16**

#27445

GILBERTSON, Chief Justice

[¶1.] Steven Pursley appeals his jury conviction for simple assault. According to Pursley, prosecutor misconduct occurred during the State's closing argument and its cross-examination of Pursley, depriving him of his rights to an attorney and due process. We affirm.

**Facts and Procedural History**

[¶2.] On Friday, November 2, 2012, Jeffrey Patterson and Caleb Fousek visited the Belle Star Gentleman's Club in Box Elder, South Dakota, where they were later joined by their friend James Thompson. Shortly after Thompson arrived, he and Patterson decided to step outside to smoke cigarettes. Crystal Sandoval, who is Defendant's sister, was outside. Patterson began flirting with Sandoval but ceased after an exchange of words with some third person.

[¶3.] After Patterson stopped talking to Sandoval, Pursley exited the Belle Star. Pursley did not speak to Patterson; instead, Pursley used his fist to strike Patterson on the left side of his head. Patterson fell to the ground unconscious, and Pursley walked back into the bar. Patterson suffered a bruise on the left side of his brain and was not released from the hospital until the following Monday. Following the attack, Patterson has suffered from headaches and short-term memory loss.

[¶4.] Fousek exited the bar in search of his friends and broke up a fight between Sandoval and another woman. Pursley again exited the bar, and Thompson identified Pursley to Fousek as the individual who knocked out Patterson. Fousek attacked Pursley, who responded by striking Fousek with his

-1-

fist, knocking him to the ground. Pursley struck Fousek a second time before being restrained by bystanders. Pursley eventually went back into the Belle Star.

[¶5.] The Box Elder Police Department was notified of the assault around 2:00 a.m. on November 3, 2012. Although an officer spoke with Fousek and several other people at the Belle Star, nobody positively identified Pursley as the attacker. No arrest was made at that time, but the officer requested surveillance footage from outside the bar.

[¶6.] Patterson and Thompson returned to the Belle Star on November 30, 2012. As they were parking, Thompson saw Pursley and recognized him as the individual who had attacked Patterson earlier in the month. Thompson called the police. Box Elder Police Officer Joshua Campbell and another officer responded to the Belle Star. After an officer spoke with Patterson and Thompson, Officer Campbell accompanied Thompson inside the bar. Thompson identified Pursley, and Officer Campbell asked Pursley to exit the bar. After they exited the bar, Officer Campbell asked Pursley about the incident that occurred at the Belle Star in the morning hours of November 3. Pursley denied any involvement. Even so, Officer Campbell arrested Pursley for the November 3 incident.

[¶7.] On December 12, 2012, Pursley was charged with assaulting both Patterson and Fousek, and a jury trial commenced on October 22, 2013. At trial, Pursley claimed his use of force against Fousek was justified as self-defense. Pursley also claimed his use of force against Patterson was justified as defense of others because according to Pursley, Patterson was sexually harassing his sister. During cross-examination, the prosecutor and Pursley had the following discussion:

[Prosecutor]: Okay.  November 30, 2012, you told Officer Campbell, "I was there.  I wasn't involved?"

. . . .

[Pursley]: Yes, ma'am.  I did say that.

[Prosecutor]: You get an attorney and today here we are 353 days later—

[Pursley]: Yes, ma'am.

[Prosecutor]: —and you are saying you did not do anything wrong?

[Pursley]: No, I did not.

[Defense Counsel]: Objection, argumentative.

[The Court]: Overruled.  This is proper cross.

[Prosecutor]: Are we here because you weren't involved or are we here because you were just defending your sister's glory at a strip joint?

[Pursley]: I was defending my sister.

[Defense Counsel]: Objection.  Again, argumentative.

[The Court]: Overruled.  It's cross-examination.

[Pursley]: I was defending my sister from some guy she didn't even know grabbing her boobs and sexually harassing her.

[Prosecutor]: Okay.  Well, I guess the jury will be—

[Pursley]: —with three people around him.

. . . .

[Prosecutor]: I'm having trouble really understanding what has happened because you've told two officers you weren't involved.

[Pursley]: Yeah.

[Prosecutor]: Now we are here today hearing a completely different story?

[Pursley]: Yeah.

[Prosecutor]: Okay.  And this is after you've had an attorney and consulted with them [sic]?

[Pursley]: Yes, ma'am.

[Prosecutor]: Okay.

[Defense Counsel]: Objection.  Asked and answered.

[The Court]: Overruled.

During her closing argument, while recounting the above sequence of events, the prosecutor said: "He then is arrested the 30th and charged with simple assault. Consults with his attorney and then bam we have this defense of convenience . . . ."

[¶8.] The jury convicted Pursley of assaulting Patterson but acquitted him of assaulting Fousek. The circuit court sentenced Pursley to 360 days in the Pennington County Jail but suspended execution of the sentence. Pursley appeals, raising one issue: Whether the prosecutor's reference to Pursley's attorney in cross-examination and closing argument violated Pursley's Sixth Amendment right to counsel and deprived him of a fair trial.

## Analysis and Decision

[¶9.] Pursley contends he is entitled to a new trial for two reasons. First, Pursley argues the prosecutor's comments violated his Sixth Amendment right to counsel. Second, Pursley argues the comments improperly attacked—without a good-faith basis for doing so—the credibility of his trial attorney by implying Pursley's attorney manufactured Pursley's affirmative defenses. Because Pursley argues that these comments prejudiced him, he concludes that he was denied a fair trial. The State argues that no misconduct occurred and that even if it did, Pursley was not prejudiced. Because harmless error analysis disposes of both arguments, we address it first.

[¶10.] When misconduct occurs, "we will reverse the conviction only if the misconduct has prejudiced the party as to deny him or her a fair trial." *State v. Smith*, 1999 S.D. 83, ¶ 44, 599 N.W.2d 344, 354. We must disregard "[a]ny error, defect, irregularity, or variance which does not affect substantial rights . . . ."

SDCL 23A-44-14 (Rule 52(a)). "Even an error involving the denial of a constitutional right can be harmless . . . ." *State v. Heumiller*, 317 N.W.2d 126, 130 (S.D. 1982); *accord Chapman v. California*, 386 U.S. 18, 23-24, 87 S. Ct. 824, 827-28, 17 L. Ed. 2d 705 (1967).* "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman*, 386 U.S. at 23, 87 S. Ct. at 827 (quoting *Fahy v. Connecticut*, 375 U.S. 85, 86-87, 84 S. Ct. 229, 230, 11 L. Ed. 2d 171 (1963)). Thus, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S. Ct. at 828.

[¶11.] Pursley asserts that "the effect of impugning [his] affirmative defense was particularly harmful due to the nature of a self-defense theory. [He] admitted as part of the self-defense that he did harm the alleged victims." However, it is not reasonably possible that the prosecutor's objected-to comments influenced the jury. First and foremost, Pursley's trial testimony undermined his own credibility by establishing that he either lied to police officers when he claimed he was not involved in the November 3 incident or he lied on the witness stand when he

---

\* Automatic reversal is required, and harmless-error analysis does not apply, when "there has been '(1) a deprivation of the right to counsel; (2) a biased judge; (3) an unlawful exclusion of grand jurors of the defendant's race; (4) a deprivation of the right of self-representation at trial; (5) a deprivation of the right to a public trial; and (6) an erroneous reasonable doubt standard.'" *State v. Hayes*, 2014 S.D. 72, ¶ 17, 855 N.W.2d 668, 674 (emphasis omitted) (quoting *Guthmiller v. Weber*, 2011 S.D. 62, ¶ 16, 804 N.W.2d 400, 406). "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose v. Clark*, 478 U.S. 570, 579, 106 S. Ct. 3101, 3106, 92 L. Ed. 2d 460 (1986).

claimed he acted in self-defense. The State also introduced evidence that Pursley has a history of speaking falsely. During cross-examination, Pursley acknowledged that on November 19, 2009, he pleaded guilty to the crime of false reporting. Furthermore, the fact that the jury acquitted Pursley on the charge of assaulting Fousek further supports the conclusion that the jury was not influenced by the prosecutor's references to defense counsel. "In all probability it is very unlikely the prosecutor's . . . statements altered the jury's verdict." *Smith*, 1999 S.D. 83, ¶ 53, 599 N.W.2d at 355. We believe the misconduct was harmless beyond a reasonable doubt; therefore, Pursley is not entitled to a new trial.

[¶12.] In light of the foregoing, we need not and do not determine whether the prosecutor's comments violated Pursley's Sixth Amendment right to counsel. Even so, we in no way condone the prosecutor's unfounded insinuation that defense counsel was complicit in manufacturing Pursley's false testimony. "The prosecutor has an overriding obligation, which is shared with the court, to see that the defendant receives a fair trial. . . . The prosecutor must refrain from injecting unfounded or prejudicial innuendo into the proceedings, and must not appeal to the prejudices of the jury." *State v. Blaine*, 427 N.W.2d 113, 115 (S.D. 1988) (citations omitted). As the United States Supreme Court has explained:

> The [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his

> duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 1314 (1935).

[¶13.]    During final summation, the prosecutor argued for a guilty verdict, pointing out that after Pursley was arrested and charged, he "consult[ed] with his attorney and then bam we have this defense of convenience[.]"  The prosecutor also made repeated, similar inferences during her cross-examination of Pursley.  After attempting to impeach Pursley for changing his story, she then asked a series of rhetorical questions designed to make statements rather than elicit answers.  She said: "So after you've had an attorney and consulted with them [sic], now you come up with this story about your sister?"  Over defense counsel's unsustained objections, the prosecutor again stated: "You get an attorney and today here we are 353 days later—and you're saying you did not do anything wrong?"  Finally, after pointing out Pursley's conflicting stories, the prosecutor stated: "And this is after you've had an attorney and consulted with them [sic]?"  Considered in their rhetorical context, these questions improperly suggested to the jury that Pursley and his defense counsel concocted a false defense to avoid a guilty verdict.

[¶14.]    There is no question that a prosecutor may suggest that a defendant's testimony is not credible by drawing the jury's attention to the defendant's inconsistent statements.  "[W]hen a defendant takes the stand, 'his credibility may be impeached and his testimony assailed like that of any other witness.'"  *Portuondo v. Agard*, 529 U.S. 61, 69, 120 S. Ct. 1119, 1125, 146 L. Ed. 2d 47 (2000) (quoting *Brown v. United States*, 356 U.S. 148, 154, 78 S. Ct. 622, 626, 2 L. Ed. 2d 589 (1958)).  In this case, however, the prosecutor's comments went beyond legitimate

impeachment.  This conduct was improper.  Regardless, as explained above, a new trial is not warranted because Pursley was not prejudiced.

[¶15.]        We affirm.

[¶16.]        ZINTER, SEVERSON, WILBUR, and KERN, Justices, concur.